**No. 21-56395**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

MAO-MSO RECOVERY II, LLC, a Delaware entity; MSP RECOVERY
CLAIMS, SERIES LLC, a Delaware entity; MSPA CLAIMS 1, LLC,
a Florida entity

*Plaintiffs-Appellants,*

v.

MERCURY GENERAL, a California company, it subsidiaries and affiliates,

*Defendant-Appellee.*

On Appeal from the United States District Court
For the Central District of California
Case No. 17-cv-02525-AB
Hon. Andre Birotte, Jr.

---

**APPELLEE'S ANSWERING BRIEF**

---

Jordan S. Altura (SBN: 209431)
Adelle Greenfield (SBN: 301514)
**GORDON & REES LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 986-5900
Facsimile: (415) 986-8054
Email: jaltura@grsm.com
Email: agreenfield@grsm.com

*Counsel for Defendant-Appellee Mercury General Corporation*

1

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................7

CORPORATE DISCLOSURE STATEMENT ........................................12

INTRODUCTION ....................................................................................13

JURISDICTIONAL STATEMENT .........................................................16

STATEMENT OF THE ISSUES...............................................................16

STATUTORY AUTHORITIES ................................................................17

STATEMENT OF THE CASE..................................................................19

I.  STATUTORY CONTEXT: THE MEDICARE SECONDARY
    PAYER ACT AND MEDICARE PART C.....................................19

    A.  The MSP Act Made the Government a Secondary Payer.................19

    B.  The MSP Act's Private Cause of Action Allows Private Parties
        to Recover If They Can Demonstrate Payment Responsibility
        and a Failure to Pay for a Prohibited Reason......................................20

    C.  Over a Decade After Enacting the MSP Act, Congress Created
        Medicare Advantage Organizations and Gave them Different
        Secondary Payer Rights than the Government Enjoys ......................22

II.  APPELLANTS' BUSINESS MODEL AND LITIGATION
     STRATEGY ..................................................................................25

    A.  MSP Recovery's Business Model Requires Litigating Claims in
        Bulk ..................................................................................................25

    B.  Courts Routinely Criticize MSP Recovery's Litigation Tactics.........28

III.  FACTUAL AND PROCEDURAL BACKGROUND .................28

    A.  MSP Recovery's Initial and First Amended Complaints Failed
        to Adequately Allege Standing .........................................................28

2

B.    MSP Recovery's Second Amended Complaints Alleged Two Exemplar Beneficiaries, but Did Not Connect them to Any Specific Medicare Advantage Organization or Assignment Chain.................................................................................29

C.    Mercury Moved to Dismiss the Second Amended Complaints..........31

D.    Discovery Revealed that MSP Recovery Did Not Own the Recovery Rights at Issue as of the Time of Filing the Complaints..........................................................................31

    1.    Preferred Medical Plan, Inc. Assignment Chain ......................32

    2.    Trinity Physicians, LLC Assignment Chain.............................32

    3.    Verimed IPA, LLC Assignment Chain.....................................33

    4.    Emblem Health Assignment Chain...........................................33

    5.    Health First Health Plans, Inc. Assignment Chain ..................34

    6.    Family Physicians Group Assignment Chain ...........................34

E.    Mercury Raised Issues Regarding Standing in Response to MSP Recovery's Class Certification Motion......................................35

F.    Upon Reviewing the Parties' Class Certification Briefing, the District Court Examined MSP Recovery's Standing *Sua Sponte* and Ordered Supplemental Briefing.....................................................35

G.    MSP Recovery Sought Clarification Regarding the District Court's Request for Supplemental Briefing, but Did Not Request Leave to File a Reply............................................................36

H.    The Parties Submitted Additional Briefing on Standing as Requested by the District Court ...........................................................37

I.    The District Court Reviewed the Parties' Briefing on Standing and Held Oral Argument ....................................................................38

J.    After Considering the Parties' Briefing and Oral Arguments Regarding Standing, the District Court Determined It Lacked Subject Matter Jurisdiction and Dismissed the Actions......................39

K.    MSP Recovery Moved for Reconsideration .......................................40

L. Over One Month After the Dismissals, MSP Recovery Moved for Leave to File Third Amended Complaints ....................................40

M. The District Court Denied MSP Recovery's Motions for Reconsideration and for Leave to Amend............................................41

STANDARDS OF REVIEW .................................................................42

ARGUMENT ........................................................................................43

I. THE DISTRICT COURT'S DISMISSAL SHOULD BE AFFIRMED BECAUSE THE COURT CORRECTLY DETERMINED THAT IT LACKED SUBJECT MATTER JURISDICTION ........................................43

A. The District Court's Process Was Fair: The Court Notified MSP Recovery of Its Concerns Regarding Standing, and Afforded MSP Recovery Ample Opportunities to Satisfy Its Burden Prior to Dismissal ........................................................................44

B. The District Court Applied the Correct Legal Standard in Evaluating MSP Recovery's Evidence ................................48

C. The District Court Correctly Determined that MSP Recovery Failed to Meet Its Burden....................................................49

1. The district court correctly limited its standing inquiry to the alleged exemplars, which did not support standing............51

a. *MSP Recovery admits – and its evidence demonstrates – that no party owns recovery rights for either J.R. or D.M.* ....................................52

b. *MSP Recovery lacks standing to pursue recovery for D.M. for the additional reason that its evidence failed to show that Trinity owned the recovery rights it purported to assign*............................55

2. The unpled exemplars could not confer standing because no party owned those recovery rights at the time of filing.......56

4

3.     MSP Recovery lacks standing to pursue any claim for the additional reason that it failed to provide any admissible evidence of Part C enrollment, conditional payments, or demonstrated payment responsibility .......................................58

II.    THE DISTRICT COURT ACTED WELL WITHIN ITS DISCRETION IN DENYING MSP RECOVERY'S UNTIMELY MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINTS ..............................................................................61

A.    The District Court Had "Particularly Broad" Discretion to Deny Leave to Amend Because MSP Recovery Had Already Amended Its Complaints Twice ..........................................61

B.    The District Court Appropriately Denied Leave to Amend Based on Undue Delay and Prejudice to Mercury ...........................62

C.    By Focusing on Futility of Amendment, MSP Recovery Seeks to Apply the Wrong Legal Standard ...................................63

D.    The District Court Did Not Abuse Its Discretion in Denying Leave to File a Rule 15(d) Supplemental Pleading Alleging Post-Filing Events ...............................................................64

E.    The District Court Did Not Abuse Its Discretion in Denying MSP Recovery's Request for Leave to Join a New Party..................65

III.   THE DISMISALS SHOULD BE AFFIRMED ON THE ADDITIONAL BASIS THAT MSP RECOVERY'S ASSIGNORS CANNOT ASSERT THE MSP ACT'S PRIVATE CAUSE OF ACTION, AS A MATTER OF LAW ..........................................67

A.    The MSP Act's Private Cause of Action Does Not Give MAOs a Federal Right of Action and Double-Damages Remedy.................68

B.    The Medicare Advantage Statutes Do Not Give MAOs a Federal Right of Action or Double-Damages Remedy ......................70

C.    Congress Had No Reason to Give MAOs a Federal Right of Action and Double-Damages Remedy and, in the Process of Doing So, Displace State Law Remedies that Congress Preserved for MAOs...........................................................72

5

CONCLUSION ................................................................................................74

STATEMENT OF RELATED CASES ...............................................................76

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Postal Workers Union of Los Angeles, AFL-CIO v. U.S. Postal Serv.*,
  861 F.2d 211 (9th Cir. 1988) ......................................................... 48, 49

*AMA Multimedia, LLC v. Wanat*,
  970 F.3d 1201 (9th Cir. 2020), ...............................................................49

*Automated Info. Processing, Inc. v. Genesys Sols. Grp., Inc.*,
  164 F.R.D. 1 (E.D.N.Y. 1995) ................................................................66

*Bernhardt v. Cnty. of Los Angeles*,
  279 F.3d 862 (9th Cir. 2002) ......................................................... 44, 46

*Billingsley v. Comm'r*,
  868 F.2d 1081 (9th Cir. 1989) ................................................................44

*Bio-Medical Applications of Tenn., Inc. v. Cent. States Se. and Sw. Areas Health & Welfare Fund*,
  656 F.3d 277 (6th Cir. 2011) ..................................................................19

*Boyd v. City & Cnty. of San Francisco*,
  576 F.3d 938 (9th Cir. 2009) ..................................................................42

*Brown v. Bank of Am., N.A.*,
  660 F. App'x 506 (9th Cir. 2016) ............................................................50

*Chodos v. W. Publ'g Co.*,
  292 F.3d 992 (9th Cir. 2002) ......................................................... 42, 61

*Csibi v. Fustos*,
  670 F.2d 134 (9th Cir. 1982) ..................................................................44

*DaVita Inc. v. Virginia Mason Mem'l Hosp.*,
  981 F.3d 679 (9th Cir. 2020) ..................................................................22

*FW/PBS, Inc. v. City of Dallas*,
  493 U.S. 215, 110 S. Ct. 596 (1990)................................................ 43, 46

7

*Glover v. Liggett Grp., Inc.*,
   459 F.3d 1304 (11th Cir. 2006) ............................................................................21

*Hajro v. U.S. Citizenship & Immigr. Servs.*,
   811 F.3d 1086 (9th Cir. 2016) ..............................................................................42

*Hammond v. Reynolds Metals Co.*,
   219 F. App'x 910 (11th Cir. 2007) ............................................................... 66, 67

*Henry v. Adventist Health Castle Med. Ctr.*,
   970 F.3d 1126 (9th Cir. 2020). ............................................................................56

*Humana Med. Plan, Inc. v. Western Heritage Ins. Co.*,
   880 F. 3d 1284 (Mem.) (11th Cir. 2018) .............................. 68, 69, 71, 72, 73, 74

*In re Engle Cases*,
   767 F.3d 1082 (11th Cir. 2014) ...........................................................................66

*Lujan, 504 U.S. v. Defs. of Wildlife*,
   504 U.S. 555, 112 S.Ct. 2130 (1992)............................. 43, 48, 50, 51, 52, 57, 58

*MAO-MSO Recovery II, LLC v. Farmers Ins. Exch.*,
   2022 WL 1690151 (C.D. Cal. May 25, 2022) ....................................... 50, 59, 60

*MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*,
   2019 WL 6311987 (C.D. Ill. Nov. 25, 2019), .............................................. 23, 47

*MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*,
   994 F.3d 869 (7th Cir. 2021) .................................................................. 13, 26, 28

*Missouri ex rel. Koster v. Harris*,
   847 F.3d 646 (9th Cir. 2017) ...............................................................................64

*Moore v. Kayport Package Exp., Inc.*,
   885 F.2d 531 (9th Cir. 1989) ......................................................................... 61, 64

*MSP Recovery Claims Series, LLC v. Sanofi-Aventis U.S. LLC*,
   2021 WL 4306866 (D.N.J. Sept. 22, 2021) .........................................................47

*MSP Recovery Claims, Series LLC v. AIG Property Casualty, Inc.*,
   2021 WL 1164091 (S.D.N.Y. Mar. 26, 2021) .....................................................13

8

*MSP Recovery Claims, Series LLC v. Merchants Mut. Ins. Co.*,
  2020 WL 8675835 (W.D.N.Y. Nov. 20, 2020) ....................................................54

*MSP Recovery Claims, Series LLC v. Nationwide Mut. Ins. Co.*,
  2022 WL 900562 (S.D. Ohio Mar. 28, 2022).........................................................47

*MSP Recovery Claims, Series LLC v. New York Cent. Mut. Fire Ins. Co.*,
  2019 WL 4222654 (N.D.N.Y. Sept. 5, 2019)......................................... 13, 14, 54

*MSP Recovery Claims, Series LLC v. Tech. Ins. Co., Inc.*,
  2020 WL 91540 (S.D.N.Y. Jan. 8, 2020) .............................................................13

*MSP Recovery Claims, Series LLC v. Travelers Cas. & Sur. Co.*,
  2018 WL 3599360 (S.D. Fla. June 21, 2018).......................................................14

*MSP Recovery Claims, Series LLC v. USAA Gen. Indem. Co.*,
  2018 WL 5112998 (S.D. Fla. Oct. 19, 2018) ................................................ 14, 54

*MSP Recovery Claims, Series, LLC v. ACE Am. Ins. Co.*,
  974 F.3d 1305 (11th Cir. 2020), ............................................................. 14, 25, 50

*MSP Recovery, LLC v. Allstate Ins. Co.*,
  835 F. 3d 1351 (11th Cir. 2016) ..................................................................... 21, 22

*Navajo Nation v. U.S. Dep't of the Interior*,
  26 F.4th 794 (9th Cir. 2022) .................................................................................64

*Northstar Fin. Advisors Inc. v. Schwab Invs.*,
  779 F.3d 1036 ...................................................................................... 57, 64, 65

*Parra v. PacifiCare of Arizona, Inc.*,
  715 F.3d 1146 (9th Cir. 2013) ........................................................ 21, 68, 70, 71

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004) ..................................................................... 48, 51

*Sanford v. MemberWorks, Inc.*,
  625 F.3d 550 (9th Cir. 2010) ...............................................................................63

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)............................................................................... 43, 50, 51

*Torres v. Lynch*,
  578 U.S. 452, 136 S. Ct. 1619 (2016)...................................................................68

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021).........................................................................................44

*Tritz v. U.S. Postal Serv.*,
  721 F.3d 1133 (9th Cir. 2013) ...............................................................................67

*United States ex rel. Poehling v. UnitedHealth Grp., Inc.*,
  2019 WL 2353125 (C.D. Cal. Mar. 28, 2019).......................................................19

*United States v. Corinthian Colleges*,
  655 F.3d 984 (9th Cir. 2011) ......................................................................... 42, 63

*Warth v. Seldin*,
  422 U.S. 490, 95 S.Ct. 2197 (1975).......................................................................51

*Wood v. City of San Diego*,
  678 F.3d 1075 (9th Cir. 2012) ...............................................................................67

*Yamada v. Snipes*,
  786 F.3d 1182 (9th Cir. 2015) ...............................................................................57

*Zurich Ins. Co. v. Logitrans, Inc.*,
  297 F.3d 528 (6th Cir. 2002) .................................................................................66

**Statutes**

42 United States Code
  Section 1395w-21 - 1995w-28....................................................................... 22, 70

42 United States Code
  Section 1395w-22 ....................................................... 17, 18, 23, 70, 72

42 United States Code
  Section 1395y..................................... 17, 18, 19, 20, 21, 23, 68, 69, 70, 71, 72, 74

Balanced Budget Act of 1997,
  Public Law Number 105-33, Section 4001, 111 Statute 251 ...............................22

Medicare, Medicaid, and SCHIP Extension Act of 2007,
  Section 111................................................................................................... 24, 37

Omnibus Budget Reconciliation Act of 1986,
Public Law Numbers 99–509, Section 9319 (1986), 100 Statute 1874 ...............21

**Rules**

Federal Rules of Civil Procedure
Rule 12 ........................................................................... 29, 44, 46, 48

Federal Rules of Civil Procedure
Rule 15 ................................................... 40, 41, 57, 61, 64, 65

Federal Rules of Civil Procedure
Rule 17 .............................................................. 55, 65, 66

Federal Rules of Civil Procedure
Rule 56 .............................................................................58

Federal Rules of Civil Procedure
Rule 59 .............................................................................40

**Regulations**

42 Code of Federal Regulations
Section 422.108............................................................... 18, 23

**Treatises**

13A C. Wright, A. Miller, and E. Cooper,
*Federal Practice and Procedure: Jurisdiction* 2d Section 3531.15, at Page 99
(1984) ...............................................................................................49

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure, Rule 26.1, defendant and appellee Mercury General Corporation states that it has no parent corporation and that no publicly held corporation owns 10% or more of its stock.


Dated:  July 15, 2022                    Respectfully submitted,

GORDON REES SCULLY
MANSUKHANI, LLP

By: */s/ Adelle Greenfield*
    Adelle Greenfield
    Attorneys for Defendant and Appellee,
    Mercury General Corporation

## **INTRODUCTION**

"Federal courts do not possess infinite patience, nor are the discovery tools of litigation meant to substitute for some modicum of pre-suit diligence." *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 869, 872 (7th Cir. 2021) ("*State Farm II*"). "A pleading is not meant to be a means by which a party can discover if they actually have a case." *MSP Recovery Claims, Series LLC v. New York Cent. Mut. Fire Ins. Co.*, 2019 WL 4222654, at *6 (N.D.N.Y. Sept. 5, 2019) ("*New York Central*").

Plaintiffs and Appellants MAO-MSO Recovery II, LLC, MSP Recovery Claims, Series LLC, and MSPA Claims 1, LLC (collectively, "MSP Recovery") and their affiliated entities have filed a multitude of lawsuits around the country, many of which have been dismissed for lack of Article III standing. *See*, *e.g.*, *State Farm II*, 994 F.3d at 878 ("at the critical put up or shut up moment of summary judgment, the plaintiffs once again failed to establish standing"); *MSP Recovery Claims, Series LLC v. AIG Property Casualty, Inc.*, 2021 WL 1164091, at *15 (S.D.N.Y. Mar. 26, 2021) ("*AIG*") (noting plaintiff had "no excuse" for having "done absolutely nothing to obtain relevant information from its assignor"); *MSP Recovery Claims, Series LLC v. Tech. Ins. Co., Inc.*, No. 18 CIV. 8036 (AT), 2020 WL 91540, at *4 (S.D.N.Y. Jan. 8, 2020) ("This Court's decision to dismiss the complaint for lack of standing is similarly not singular, as it joins a growing

contingent of courts that have dismissed complaints brought by Plaintiffs due to various standing defects."); *New York Central*, 2019 WL 4222654, at *6 (explaining that, in "a flagrant abuse of the legal system," the MSP companies "file deficient complaints, rely on courts to point out the problems, and then repeatedly amend their pleadings until they get it right"); *MSP Recovery Claims, Series LLC v. USAA Gen. Indem. Co.*, 2018 WL 5112998, at *13 (S.D. Fla. Oct. 19, 2018) ("*USAA*") ("it is evident Plaintiff has played fast and loose with facts, corporate entities, and adverse judicial rulings"); *MSP Recovery Claims, Series LLC v. Travelers Cas. & Sur. Co.*, 2018 WL 3599360, at *4 (S.D. Fla. June 21, 2018), aff'd as modified sub nom. *MSP Recovery Claims, Series, LLC v. ACE Am. Ins. Co.*, 974 F.3d 1305 (11th Cir. 2020) (reminding MSP Recovery of its "duty of candor to the Court, which included a duty not to submit 'knowingly inaccurate' information").

Here, the district court dismissed the underlying actions for lack of subject matter jurisdiction because MSP Recovery failed to produce evidence of an injury in fact in response to the district court's *sua sponte* factual challenge to standing. This Court should affirm the dismissals because the district court correctly determined that MSP Recovery failed to meet its burden of establishing an injury in fact as required for Article III standing. Despite a fair process during which MSP Recovery received notice of the district court's concerns about standing and

ample opportunities to brief the issues and present oral arguments, MSP Recovery failed to support a *prima facie* case of standing.

MSP Recovery's own evidence negates its allegations of standing. The assignment documents show that the named plaintiffs do not own the recovery rights for the beneficiaries alleged in the operative complaints, and they did not own the recovery rights for additional unpled "exemplar" beneficiaries at the time the lawsuits were filed.

In addition to the defects in the assignment chains – and contrary to MSP Recovery's false assertions that Mercury "undeniably owes" reimbursement for secondary payment – MSP Recovery also failed to produce admissible evidence to support that its assignors suffered concrete injuries, as required for standing. There is no admissible evidence to support that the beneficiaries were enrolled in Part C plans, that MSP Recovery's assignors made conditional payments, that Mercury had payment responsibility for the medical services at issue, or that Mercury failed to pay for a reason prohibited by the MSP Act. Thus, even applying a summary judgment standard, as Appellants invite this Court to do, MSP Recovery failed to meet its burden and the dismissals must be affirmed.

In addition, the district court acted well within its discretion in denying MSP Recovery's untimely motion for leave to file third amended complaints, based on

its determinations that granting the amendments after the cases had been dismissed would cause both undue delay and prejudice to Mercury.

The dismissals should also be affirmed for the additional reason that the MSP Act's private cause of action is not available to MSP Recovery's assignors as a matter of law, and therefore MSP Recovery failed to state a claim on which relief could be granted.

## JURISDICTIONAL STATEMENT

Although the underlying district court action involved claims arising under federal law, the district court correctly determined that it lacked subject matter jurisdiction because MSP Recovery lacked Article III standing, including a failure to satisfy Article III's injury-in-fact requirement. MSP Recovery's lack of Article III standing also deprives this Court of subject matter jurisdiction.

## STATEMENT OF THE ISSUES

1.  Did the district court correctly determine that it lacked subject matter jurisdiction because MSP Recovery failed to produce evidence of an injury-in-fact as required for Article III standing, after MSP Recovery received notice of the district court's *sua sponte* factual challenge and an opportunity to respond by providing additional briefing, evidence, and oral argument?

2.  Did the district court act within its discretion in denying MSP Recovery's motion for leave to file a Third Amended Complaint based on undue

16

delay and prejudice to Mercury, where the action had been pending for over four years upon dismissal, and where MSP Recovery waited to move for leave to amend for over one month after the court dismissed the action for lack of standing, over four months after the court notified the parties of its factual challenge to MSP Recovery's standing allegations, and over six months after Mercury filed its opposition to class certification in which Mercury raised concerns about MSP Recovery's standing?

3.    Should this Court affirm the district court's dismissals on the alternative basis that Medicare Advantage Organizations have no federal right of action for reimbursement under the Medicare Secondary Payer Act's private cause of action provision, 42 U.S.C. § 1395y(b)(3)(A), as a matter of law, and therefore MSP Recovery failed to state a viable claim for relief?

## **STATUTORY AUTHORITIES**

Except for the following, all applicable statutes and regulations are contained in the Addendum to Appellants' Opening Brief:

**42 U.S.C. § 1395w-22(a)(4)**

**(a) Basic benefits**
. . .

**(4) Organization as secondary payer**

Notwithstanding any other provision of law, a Medicare+Choice organization may (in the case of the provision of items and services to an individual under a Medicare+Choice plan under

circumstances in which payment under this subchapter is made secondary pursuant to section 1395y(b)(2) of this title) charge or authorize the provider of such services to charge, in accordance with the charges allowed under a law, plan, or policy described in such section—

(A) the insurance carrier, employer, or other entity which under such law, plan, or policy is to pay for the provision of such services, or

(B) such individual to the extent that the individual has been paid under such law, plan, or policy for such services.

42 U.S.C. § 1395w-22(a)(4).

### 42 C.F.R. § 422.108(b)

(b) Responsibilities of the MA organization. The MA organization must, for each MA plan—

(1) Identify payers that are primary to Medicare under section 1862(b) of the Act and part 411 of this chapter;

(2) Identify the amounts payable by those payers; and

(3) Coordinate its benefits to Medicare enrollees with the benefits of the primary payers, including reporting, on an ongoing basis, information obtained related to requirements in paragraphs (b)(1) and (b)(2) of this section in accordance with CMS instructions.

42 C.F.R. § 422.108(b).

## STATEMENT OF THE CASE

## I. STATUTORY CONTEXT: THE MEDICARE SECONDARY PAYER ACT AND MEDICARE PART C

### A. The MSP Act Made the Government a Secondary Payer

Under Parts A and B of the Medicare Act, known as "traditional" Medicare, the United States Centers for Medicare & Medicaid Services ("CMS") directly reimburses healthcare providers for covered services. *See e.g.*, *United States ex rel. Poehling v. UnitedHealth Grp., Inc.*, No. CV 16-8697-MWF (SSX), 2019 WL 2353125, at *2 (C.D. Cal. Mar. 28, 2019). Medicare was the "primary payer" of health costs for its beneficiaries until 1980, when Congress enacted the Medicare Secondary Payer Act ("MSP Act"), codified at 42 U.S.C. § 1395y, to "counteract escalating healthcare costs." *Bio-Medical Applications of Tenn., Inc. v. Cent. States Se. and Sw. Areas Health & Welfare Fund*, 656 F.3d 277, 281 (6th Cir. 2011). The MSP Act made CMS a "secondary payer" where both Medicare and a private plan would cover a Medicare beneficiary's expenses. *Id.*

The MSP Act prohibits CMS from paying for items or services when a primary plan has paid them or can reasonably be expected to pay. 42 U.S.C. § 1395y(b)(2)(A). But if the primary plan "has not made or cannot reasonably be expected to make payment," CMS is permitted to pay, so long as the payment is "conditioned on reimbursement to the appropriate Trust Fund in accordance with

19

the succeeding provisions of this subsection." 42 U.S.C. § 1395y(b)(2)(B)(i). This is called a "conditional payment." *Id.*

If CMS makes a conditional payment, the primary plan (or an entity that receives payment from a primary plan) must reimburse the appropriate Medicare Trust Fund for that conditional payment "if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service." 42 U.S.C. § 1395y(b)(2)(B)(ii). In other words, a primary plan's obligation to reimburse the appropriate Trust Fund for any payment made by CMS is triggered only if payment responsibility is demonstrated. *Id.*

The MSP Act contains enforcement mechanisms enabling the United States government to recover conditional payments, in the form of subrogation rights and a cause of action with a double-damages remedy in favor of the United States. 42 U.S.C. § 1395y(b)(2)(B)(iii-iv). The MSP Act also creates a disclosure mechanism to assist primary plans in determining whether they owe reimbursement, and establishes appeal rights and procedures for challenging conditional payment determinations. *See* 42 U.S.C. §§ 1395y(b)(2)(B)(v)–(viii).

**B. The MSP Act's Private Cause of Action Allows Private Parties to Recover If They Can Demonstrate Payment Responsibility and a Failure to Pay for a Prohibited Reason**

Congress amended the MSP Act to add a private cause of action in 1986. *See* Omnibus Budget Reconciliation Act of 1986, Pub.L. No. 99–509, § 9319

(1986), 100 Stat. 1874. This private cause of action "was intended to allow private parties to vindicate wrongs occasioned by the failure of primary plans to make payments." *Parra v. PacifiCare of Arizona, Inc.*, 715 F.3d 1146, 1154–55 (9th Cir. 2013) ("*Parra*").

The MSP Act's private cause of action provision states, "[t]here is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and 2(A)." 42 U.S.C. § 1395y(b)(3)(A). The primary plan's responsibility to pay for items or services is a condition precedent to any obligation to reimburse Medicare, and therefore "must be demonstrated before an MSP private cause of action for failure to reimburse Medicare can correctly be brought." *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1309 (11th Cir. 2006).

The existence of a contractual obligation may satisfy the private cause of action's demonstrated responsibility requirement, but it does not conclusively demonstrate liability. *MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F. 3d 1351, 1361 (11th Cir. 2016). It "does not relieve plaintiffs of their burden to allege in their complaints, and then subsequently prove with evidence, that Defendants' valid insurance contracts actually render Defendants responsible for primary

payment of the expenses Plaintiffs seek to recover." *Id.* Moreover, "Defendants may still assert any valid contract defense in arguing against their liability." *Id.*

In addition, the Ninth Circuit has explained that MSP Act liability requires a refusal to pay for a reason forbidden by the act. *DaVita Inc. v. Virginia Mason Mem'l Hosp.*, 981 F.3d 679, 692 (9th Cir. 2020). The MSP Act "does not convert ordinary billing disputes into MSP claims giving rise to double damages." *Id.* For example, "no MSP claim would be available if the insurer declines to pay because of a good-faith assertion that the beneficiary has reached the plan's maximum payments, that the claim is fraudulent, that the beneficiary failed to obtain preapproval for a service, that the beneficiary's coverage had expired, and so on." *Id.*

## C. Over a Decade After Enacting the MSP Act, Congress Created Medicare Advantage Organizations and Gave them Different Secondary Payer Rights than the Government Enjoys

When Congress enacted the MSP Act's private cause of action in 1986, Medicare Advantage Organizations ("MAOs") did not yet exist, and would not exist for another 11 years. *See* Balanced Budget Act of 1997, Pub. L. No. 105-33, § 4001, 111 Stat. 251. Congress first created MAOs in 1997, when it enacted Medicare Part C, codified at 42 U.S.C. §§ 1395w-21 – 1395w-28, also known as "Medicare+Choice" or "Medicare Advantage." *See id.* Under Part C, private insurers can contract with CMS to become MAOs, which provide the same

benefits that CMS provides under traditional Medicare.  *See* 42 U.S.C. §§ 1395w-22(a).

Part C contains a provision titled "Organization as Secondary Payer."  42 U.S.C. § 1395w-22(a)(4).  But unlike the MSP Act, Part C's secondary payer provision does not create a cause of action; it merely authorizes MAOs to charge primary plans "under circumstances in which payment . . . is made secondary pursuant to section 1395y(b)(2)."  42 U.S.C. § 1395w-22(a)(4).

Medicare Part C's implementing regulations require MAOs to coordinate benefits with primary payers and timely submit reimbursement requests.  42 C.F.R. §422.108(b) ("The MA organization must, for each MA plan – (1) Identify payers that are primary to Medicare . . . (2) Identify the amounts payable by those payers; and (3) Coordinate its benefits to Medicare enrollees with the benefits of the primary payers …"); *see also MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, No. 1:17-CV-1537, 2019 WL 6311987, at *6 (C.D. Ill. Nov. 25, 2019), aff'd, 994 F.3d 869 (7th Cir. 2021) ("*State Farm I*") ("the implementing regulations require MAOs to identify and coordinate with primary insurers.").

Primary payers facilitate this process by reporting to CMS regarding payments made on behalf of potential Medicare beneficiaries.  1395y(b)(8).[1]  CMS

---

[1] This requirement was added as part of the Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 ("Section 111").

provides the Section 111 reports to the appropriate MAOs, enabling them to identify and coordinate benefits with primary plans. SER-60-61 ("[F]or the last eight years CMS has provided all Section 111 Reports to the Part C and Part D Plans"); *see also* 3-ER-431-432[2] at ¶10 (MSP Recovery's acknowledgement that it has access to primary plans' Section 111 reporting).

However, the information only flows one way: CMS notifies MAOs of reports by primary plans, but it does not notify the primary plan that a Part C plan has made a conditional payment, nor does it identify such plans to enable the primary plan to coordinate benefits. *Id.*[3] Thus, the onus remains on MAOs to coordinate benefits with primary plans based on the identifying information it receives from CMS. *Id.* ("Congress expects Part C . . . Plans to continue to seek recovery of claims by timely notifying settling parties when a payment has been made that should be reimbursed, consistent with the CMS notice procedures").

---

[2] Although MSP Recovery appeals the dismissals of two different district court cases that were not consolidated, the vast majority of documents in the Excerpts of Record are from the district court's file for Case No. 17-cv-02525. MSP Recovery largely fails to cite to the record for Case No. 17-cv-02557.

[3] Proposed legislation, the PAID Act, would correct this information asymmetry by having CMS identify relevant Part C plans to settling parties in response to a section 111 report. SER-55-59, 60-61.

## II.    APPELLANTS' BUSINESS MODEL AND LITIGATION STRATEGY

### A.    MSP Recovery's Business Model Requires Litigating Claims in Bulk

Appellants are not MAOs, they are part of a network of debt collection companies that includes MSP Recovery, LLC and its affiliates (collectively, "MSP companies").  *See* Appellants' Opening Brief ("AOB") at 1 (Disclosure Statement); *see also MSP Recovery Claims, Series LLC v. Ace American Ins. Co.,* 974 F.3d 1305, 1308 (11th Cir. 2020), *cert. denied*, 141 S. Ct. 2758 (2021) ("Plaintiffs are collection agencies. . . .").  According to the MSP companies' SEC filings, MSP Recovery, LLC "acquires claims from its Assignors and utilizes its data analytics services to identify improper payments for healthcare services," then seeks to recover amounts owed.[4]

In contrast to most debt collectors operating in the health care services industry, which typically seek to coordinate benefits with primary payers on a claim-by-claim basis to avoid litigation, the MSP companies' business model requires that they litigate claims in bulk and "on a large scale."[5]  MAOs assign the

---

[4] Amendment No. 3 to Form S-4, Registration Statement Under the Securities Act of 1933, Lionheart Acquisition Corporation II, Preliminary Proxy Statement/Prospectus, https://www.sec.gov/ix?doc=/Archives/edgar/data/1802450/000114036122008991/ny20000825x6_s4a.htm#aANNEXA4, p. xii ("What is MSP's Business") (accessed July 3, 2022).

[5] https://investors.msprecovery.com/node/7151/html  ("By discovering, quantifying, and settling the gap between Billed Amount and Paid Amount on a

MSP Companies "large baskets of potential conditional payments in exchange for a percentage of anything recovered." *State Farm II*, 994 F.3d at 872. Because "it is often unclear at the time of the initial assignment what, if any, value exists in the assigned receivables," the MSP companies "have financial incentives to expend as little as possible on the front end of these assignment arrangements." *Id.* If the MSP Companies are "successful in recovering double damages through litigation, there is sufficient revenue to make the litigation and collection effort worth the collector's while," whereas if litigation is unsuccessful, they lose only their litigation costs. *Id.*

The MSP companies have filed hundreds of lawsuits in various jurisdictions since 2016, and as they acknowledge in their SEC filings, they "historically" have received adverse rulings such as dismissals: (1) "for failure to file within the applicable statute of limitations," (2) "because an assignment did not include the claim that was brought in court (or such assignment was found to be invalid)," (3) "for lack of standing to assert claims," (4) "for lack of personal jurisdiction," (5) "for lack of subject matter jurisdiction," and (6) "for pleading deficiencies."[6] The

---

large scale, we believe we are positioned to generate meaningful annual recovery revenue at high profit margins") ("The Opportunity") (accessed July 3, 2022).

[6] Amendment No. 3 to Form S-4, Registration Statement Under the Securities Act of 1933, Lionheart Acquisition Corporation II, Preliminary Proxy Statement/Prospectus,
https://www.sec.gov/ix?doc=/Archives/edgar/data/1802450/000114036122008991/

MSP Companies further admit that they sometimes pursue claims that were not assigned to them and which they have no legal right to pursue, explaining that, "due to the nature and volume of data, it may not be possible to identify with precision all such claims."[7]

Despite filing numerous lawsuits, the MSP companies have admitted in their own SEC filings that they have a "limited track record of generating actual recoveries and related revenue from the claims that we have purchased or otherwise been assigned" and thus have "a history of net losses and no substantial revenue to date."[8]

Despite MSP Recovery's lack of revenue, its CEO and 65% stakeholder, John H. Ruiz, lives a billionaire lifestyle.[9] Mr. Ruiz and his business partner also own the law firm that will be MSP Recovery's exclusive lead counsel, positioning them to receive 20% of all payments recovered through MSP Act litigation.[10]

---

ny20000825x6_s4a.htm#aANNEXA4, p. 30 ("Risks Related to MSP's Business and Industry") (accessed July 3, 2022).

[7] *Id.*, p. 31

[8] https://www.sec.gov/ix?doc=/Archives/edgar/data/1802450/000114036122008991/ny20000825x6_s4a.htm#aANNEXA4, p. 28-29 (filed March 11, 2022; "Risk Factors" – "Risks Related to MSP's Business and Industry"); MSP Recovery's May 27, 2022 Form 8-K, https://investors.msprecovery.com/node/7151/html (accessed July 3, 2022)

[9] *See* https://www.bloomberg.com/news/articles/2022-05-24/mega-spac-mints-a-21-billion-fortune-that-collapses-in-minutes (accessed July 3, 2022)

[10] *Id.*

**B.      Courts Routinely Criticize MSP Recovery's Litigation Tactics**

In case after case, courts around the country have criticized the MSP Companies for their "sue first and ask questions later" approach to litigation in which they "rush to file litigation in the hope that discovery will show whether an actual case or controversy exists." *State Farm II*, 994 F.3d at 878 (collecting cases). For example, the Seventh Circuit has explained that the MSP companies "pull the litigation trigger before doing their homework" when they "sue to collect on receivables they paid little or nothing for and then rely on the discovery process to show they acquired something of value and thus have an enforceable right to collect." *Id*. As the Seventh Circuit warned, this approach has "all the earmarks of abusive litigation" and the MSP companies' counsel "would be well advised to confirm the existence of an actual injury before once again availing themselves of the judicial process." *Id.* at 871, 879.

## III.    FACTUAL AND PROCEDURAL BACKGROUND

### A.      MSP Recovery's Initial and First Amended Complaints Failed to Adequately Allege Standing

MSP Recovery filed the underlying actions on March 31, 2017 and April 3, 2017, alleging that Mercury failed to reimburse MAOs for payments made on behalf of Medicare beneficiaries who were injured in car accidents, and that "[n]umerous MAOs have assigned their recovery rights" for these claims to MSP Recovery. 5-ER-962-989, 939-961. Mercury moved to dismiss under Rules

28

12(b)(1) and 12(b)(6) based on lack of Article III standing and failure to state a claim, including arguments that the MSP Act's private cause of action is not available to MAOs as a matter of law. SER-143-169, 170-193. MSP Recovery chose not to oppose the motion, and instead filed amended complaints. 5-ER-886-914; 5-ER-915-938. Mercury moved to dismiss the amended complaints for failure to cure the defects in the original pleading. SER-090-117, 118-142. The district court granted Mercury's motion and dismissed the First Amended Complaints with leave to amend. 5-ER-876-885.

**B.  MSP Recovery's Second Amended Complaints Alleged Two Exemplar Beneficiaries, but Did Not Connect them to Any Specific Medicare Advantage Organization or Assignment Chain**

MSP Recovery filed Second Amended Complaints ("SACs") on November 16, 2017. 5-ER-743-811, 5-ER-812-875, 6-ER-1005, 6-ER-1062. Both SACs are brought by the same three MSP companies: (1) MAO-MSO Recovery II, LLC, a Delaware entity; (2) MSPA Claims 1, LLC, a Florida entity; and (3) MSP Recovery Claims, Series LLC, a Delaware entity. 5-ER-743, 812.

The SAC in the "no-fault" action alleges two "exemplar" Medicare beneficiaries, J.R. and D.M. 5-ER-798 at ¶140. MSP Recovery alleges that J.R. and D.M.'s auto-accident related medical expenses were paid by "an MAO whose right to recover under the MSP Act has been assigned to Plaintiffs." *Id.* MSP Recovery did not allege which MAO enrolled J.R. and D.M., nor did they allege

who assigned them the right to recover conditional payments related to those beneficiaries. *Id.*

The SAC in the "settlement" action alleges a single "exemplar" beneficiary, D.M. (the same beneficiary alleged in the no-fault action). 5-ER-864, ¶135. As in the "no-fault" complaint, MSP Recovery alleges D.M.'s auto-accident related medical expenses were paid by "an MAO whose right to recover under the MSP Act has been assigned to Plaintiffs." *Id.* MSP Recovery does not allege which MAO enrolled D.M., or who assigned MSP Recovery the right to recover conditional payments related to D.M. *Id.*

The SACs also contain allegations regarding assignments of recovery rights to MSP Recovery (without identifying the beneficiaries to whom the assignments allegedly pertain). *See* 5-ER-790, ¶ 122; 5-ER-855, ¶ 115. For example, MSP Recovery alleged that on May 3, 2016 an MAO named Preferred Medical Plan, Inc. ("PMPI") assigned its rights to recover conditional payments to MSP Recovery, LLC, and that on August 8, 2016, MSP Recovery, LLC assigned those rights to MAO-MSO-Recovery II, LLC, who was the final recipient of the assignment. 5-ER-790, ¶ 122. MSP Recovery further alleged that on November 13, 2015, a physicians group named Trinity Physicians, LLC ("Trinity") assigned its recovery rights to a company called MSP Recovery 15-592, LLC and that on June 12, 2017, MSP Recovery 15-592, LLC assigned those rights to named

Plaintiff MSP Recovery Claims, Series LLC, who was the final recipient of the assignment.  5-ER-855, ¶115.

### C.    Mercury Moved to Dismiss the Second Amended Complaints

Mercury again moved to dismiss for lack of standing and failure to state a claim.  Mercury argued, among other things, that MSP Recovery failed to adequately allege that its assignors actually owned the recovery rights at issue and validly assigned those rights to MSP Recovery, and that the MSP Act's private cause of action is not available to MAOs as a matter of law.  4-ER-725-739; SER-062-89.  The district court ultimately found that MSP Recovery plausibly alleged injury in fact sufficient to survive Mercury's facial challenge to standing and denied the motion.  4-ER-695-696.  However, the district court acknowledged that Mercury "points to certain assignments under which Plaintiffs may ultimately not be entitled to recover."  4-ER-696:12-13.

### D.    Discovery Revealed that MSP Recovery Did Not Own the Recovery Rights at Issue as of the Time of Filing the Complaints

The parties conducted extensive discovery regarding the alleged claims and assignments.  *See* AOB at 61.  Discovery revealed that non-parties owned the recovery rights purportedly assigned by Preferred Medical Plan, Inc., Trinity Physicians, LLC, Verimed IPA, LLC, Emblem Health, Health First Health Plans, Inc., and Family Physicians Group, as further discussed below.

### 1. Preferred Medical Plan, Inc. Assignment Chain

MSP Recovery produced documents reflecting that on May 3, 2016, PMPI assigned its recovery rights to MSP Recovery, LLC. 7-ER-1184. Although the SACs alleged that the final recipient of the PMPI assignment was "MAO-MSO-Recovery II, LLC," MSP Recovery produced documents revealing that the true recipient of the second assignment was a different company, "MAO-MSO Recovery II LLC, Series PMPI, a segregated series of MSP Recovery Delaware LLC" ("Series PMPI"). 7-ER-1190. MSP Recovery's documents reflect that Series PMPI, which is not a named Plaintiff in either lawsuit, had obtained the PMPI recovery rights on August 8, 2016, and still owned them when MSP Recovery filed the underlying district court action on May 31, 2017. *See id.*

### 2. Trinity Physicians, LLC Assignment Chain

MSP Recovery also produced documents reflecting that Trinity assigned its recovery rights to non-party "MSP Recovery 15-592, LLC" on November 3, 2015. 7-ER-1116. Although the SACs alleged that the final recipient of the Trinity assignment was Plaintiff "MSP Recovery Claims, Series LLC," MSP Recovery produced documents revealing that the true recipient of the second assignment in this chain was a different company, "Series 15-11-371, LLC, a series of MSP Recovery Claims, Series LLC." 5-ER-855, ¶ 115; 7-ER-1127. MSP Recovery's documents reflect that Series 15-11-371, LLC, which is not a party to either

lawsuit, had obtained the Trinity recovery rights on May 31, 2017, and still owned them when MSP Recovery filed the underlying district court action on April 3, 2017.  7-ER-1127.

### 3. Verimed IPA, LLC Assignment Chain

MSP Recovery produced documents reflecting that on April 7, 2016, a physicians' association named Verimed IPA, LLC ("Verimed") assigned its recovery rights to non-party MSP Recovery, LLC.  7-ER-1130.  According to MSP Recovery's documents, on June 12, 2017 (over 3 months after MSP Recovery filed the underlying lawsuits), MSP Recovery, LLC assigned the Verimed recovery rights to non-party "Series 15-09-108, LLC, a series of MSP Recovery Claims, Series LLC."  7-ER-1137.

### 4. Emblem Health Assignment Chain

MSP Recovery produced documents reflecting that on March 20, 2018 (over 11 months after MSP Recovery filed the underlying lawsuits), Emblem Health assigned its recovery rights to non-parties MSP Recovery, LLC and "Series 16-08-483, a designated series of MSP Recovery Claims, Series LLC," neither of which is a named plaintiff.  7-ER-1164-1166.  According to MSP Recovery's documents, on April 4, 2018 (over one year after MSP Recovery filed the underlying lawsuits), MSP Recovery, LLC assigned its interest in the Emblem Health recovery rights to

non-party "Series 16-08-483, a series of MSP Recovery Claims, Series LLC." 7-ER-1167.

### 5. Health First Health Plans, Inc. Assignment Chain

MSP Recovery produced documents reflecting that Health First Administrative Plans ("HFAP") assigned its recovery rights to non-party MSP Recovery, LLC on April 28, 2016. 7-ER-1140. On June 1, 2018, MSP Recovery, HFAP, and a third entity named Health First Health Plans, Inc. ("HFHP") entered an addendum agreement stating they intended the April 28, 2016 assignment to be from HFHP. 7-ER-1154-1155. According to MSP Recovery's documents, on August 21, 2019 (over 16 months after MSP Recovery filed the underlying lawsuits), MSP Recovery, LLC assigned HFHP's recovery rights to non-party "Series 16-05-456, a designated series of MSP Recovery Claims, Series LLC." 7-ER-1153.

### 6. Family Physicians Group Assignment Chain

MSP Recovery produced documents reflecting that Family Physicians Group ("FPG") assigned its recovery rights to non-party MSP Recovery, LLC on October 6, 2017 (over six months after MSP Recovery filed the underlying lawsuits). 7-ER-1170. According to MSP Recovery's documents, MSP Recovery, LLC later reassigned the FPG rights to non-party "Series 17-05-634, a series of MSP Recovery Claims, Series LLC." 7-ER-1181.

34

### E. Mercury Raised Issues Regarding Standing in Response to MSP Recovery's Class Certification Motion

On February 26, 2021, MSP Recovery moved for class certification. *See* 6-ER-1040. Mercury opposed the motion and pointed out issues with MSP Recovery's ability to demonstrate standing, including that the named plaintiffs did not own the claims at issue. 4-ER-552:3-24; 4-ER-577:7-578:7. Mercury further explained that even though MSP Recovery created spreadsheets of data matches, this alone did not indicate that Mercury failed to pay, and that MSP Recovery would ultimately need actual evidence, not data, to establish a primary payment obligation and a failure to pay. 4-ER-557, n.4; 4-ER-575:7-18.

MSP Recovery filed a reply in support of class certification in which it acknowledged Mercury's arguments that the assignments did not confer standing. SER-045:12-18. In response, MSP Recovery asserted that "the alleged invalidity of an assignment" does not defeat class certification. *Id.*

### F. Upon Reviewing the Parties' Class Certification Briefing, the District Court Examined MSP Recovery's Standing *Sua Sponte* and Ordered Supplemental Briefing

While reviewing the parties' briefing on class certification, the district court became aware of potential issues regarding MSP Recovery's standing, particularly whether it had alleged injury in fact. 1-ER-17:16-20. The district court held a hearing on class certification, during which it raised these issues and explained that it had concerns "as to whether or not there is enough evidence here to support

35

standing," despite the completion of extensive discovery.  3-ER-463:18-24.  The district court identified several specific issues, including: (1) who owns the claims that MSP Recovery is pursuing; (2) whether MSP Recovery has a right to sue on behalf of certain MAOs; (3) whether or not "the individuals . . . that MSP Recovery proposes as representatives in this class . . . were covered under the assignments"; and (4) whether there is a factual basis showing that reimbursement was . . . required."  3-ER-463:25-464:6.  In response, MSP Recovery's counsel John H. Ruiz acknowledged standing would hinge on the J.R. and D.M. exemplars. *See* 3-ER-466:8-14.

Because "federal courts are required *sua sponte* to examine jurisdictional issues such as standing," on May 10, 2021 the district court ordered supplemental briefing "to determine whether there was evidence of injury-in-fact."  1-ER-20; 3-ER-458-59.  Specifically, the district court asked MSP Recovery to address "whether there is evidence showing injury-in-fact (by way of exemplar(s)) and whether this injury was caused by Defendant's improper refusal to pay."  3-ER-459.

### G.    MSP Recovery Sought Clarification Regarding the District Court's Request for Supplemental Briefing, but Did Not Request Leave to File a Reply

MSP Recovery filed a 15-page *ex parte* application for clarification of the district court's May 10, 2021 order in which it argued it was unable to comply with

the order to submit evidence showing an injury-in-fact without additional discovery.  SER-014-015.  MSP Recovery did not challenge the sequencing of the briefing requested by the district court, nor did it request leave to file a reply brief. *See id.*

The district court denied MSP Recovery's application, explaining that "[t]he transcript of this hearing, along with the May 10, 2021 Order, clearly lays out what the parties are to include in their briefing."  3-ER-456.  The district court further noted that "Plaintiffs have impermissibly sought to have the Court convert this Ex Parte Application for Clarification into a motion to compel discovery," and declined to do so.  3-ER-456:26-457:1.

## H. The Parties Submitted Additional Briefing on Standing as Requested by the District Court

MSP Recovery submitted its briefing regarding standing.  3-ER-433.  MSP Recovery relied largely on its assignment documents, vehicle crash reports, spreadsheets it created to reflect "raw data" purportedly obtained from its assignors, and information from Mercury's Section 111 reporting.  *See* 3-ER-429-432; 7-ER-1108-1111, 8-ER-1413-49.  MSP Recovery did not submit any Part C plan enrollment documents or documentary evidence of conditional payments by its assignors.  *See id.*

In its briefing on standing, MSP Recovery admits that no party owns the recovery rights for the J.R. claim, as those rights were assigned to "MAO-MSO

Recovery II LLC, Series PMPI," which is not a party to the actions.  3-ER-451-452

at n. 13.  MSP Recovery asserted that these types of "technical defects do not

impair standing."  3-ER-452 at n. 13.  MSP Recovery asserted that supplemental

and amended pleadings would cure any standing defects, but it did not move for

leave to supplement or amend the complaints or to join the assignee of J.R.'s

recovery rights at that time.  *See id.*

Mercury filed its response to MSP Recovery's briefing on standing.  3-ER-

410.  Mercury argued that MSP Recovery failed to meet its burden to establish

standing because its own evidence shows MSP Recovery does not own the

recovery rights to the two exemplar claims alleged in the complaints, and it offered

no evidence of conditional payments, demonstrated payment responsibility, or any

improper refusal to pay by Mercury.  3-ER-423-427.

## I.  The District Court Reviewed the Parties' Briefing on Standing and Held Oral Argument

The district court held oral argument again at the continued hearing on class

certification on July 30, 2021.  3-ER-383.  At the hearing, the district court noted

that the documents submitted by MSP Recovery "seems to show that there's a

breakdown in these assignments which makes it a challenge to – to even get to the

substance of these potential violations."  3-ER-386:7-10.  The district court

repeatedly asked MSP Recovery's counsel to explain why the current holders of

the assignments did not include any of the named plaintiffs.  3-ER-386:11-13,

38

402:23-403:10.  MSP Recovery's counsel responded that this was "a red herring."

3-ER-402:23-403:10.  MSP Recovery's counsel also admitted during oral

argument that a parent LLC lacks a right to sue on behalf of its subsidiary "series"

LLC unless so provided in the parent LLC's operating agreement.  3-ER-403:17-

404:6, 405:20-24.  MSP Recovery did not request leave to amend or supplement

the complaints during oral argument.

### J.    After Considering the Parties' Briefing and Oral Arguments Regarding Standing, the District Court Determined It Lacked Subject Matter Jurisdiction and Dismissed the Actions

On August 13, 2021, over four years after MSP Recovery commenced the

lawsuit, the district court dismissed the actions without prejudice for lack of

standing.  1-ER-19, 25.  The district court explained that because MSP Recovery

was proceeding based on assignments, "injury in fact hinges upon both the

assignment of rights and the underlying claims."  1-ER-20:25-27.  MSP Recovery

failed to show a legally protected interest in either of the two pled exemplar claims

because its own assignment documents reflected that no named Plaintiff in the

actions received an assignment of recovery rights for those claims.  1-ER-22:18-1-

ER-23:1; 1-ER-25, n. 2.  In addition, MSP Recovery's own evidence indicated that

the purported assignor of the D.M. claim, Trinity, did not own the recovery rights

it sought to assign.  1-ER-21:15-26.  Further, while not outcome dispositive, MSP

Recovery offered no evidence to support that exemplar beneficiary J.R. was

actually covered by the MAO that purported to assign J.R.'s recovery rights to

MSP Recovery.  1-ER-22:9-17.

### K.      MSP Recovery Moved for Reconsideration

On September 9, 2021, a month after the dismissal of the case, MSP

Recovery moved for reconsideration of the dismissal order under Rule 59(e).  2-

ER-196.  MSP Recovery argued, among other things, that the district court should

have applied non-binding decisions allowing parent LLCs to bring claims on

behalf of their series LLCs based on their operating agreements.  2-ER-209-212.

MSP Recovery also attempted to use its motion for reconsideration to expand the

record by attaching additional evidence which was not before the district court

when it dismissed the actions for lack of standing.  *See* 3-ER-233, ¶¶ 3, 9.  The

newly submitted evidence included MSP Recovery, LLC's operating agreement

and a document purported to be "Attachment D-1 of the Group Participation

Agreement between Freedom Health, Inc. and Trinity Physicians, LLC," neither of

which had been submitted by MSP Recovery prior to dismissal.  *See id.*

### L.      Over One Month After the Dismissals, MSP Recovery Moved for Leave to File Third Amended Complaints

On September 24, 2021, over one month after the district court dismissed the

actions for lack of standing, MSP Recovery moved for leave to file Third

Amended Complaints.  2-ER-27.  MSP Recovery's motion included requests to

amend the complaints under Rule 15(a) to allege new operative facts, to

40

supplement the complaints to allege post-filing events under Rule 15(d), and to join a new party. 2-ER-33-34, 38, 49. MSP Recovery sought to join MAO-MSO Recovery II LLC, Series PMPI as a new party in substitution for named plaintiff MAO-MSO Recovery II LLC, a separate and distinct company which had been prosecuting the action for over four years based on assignments it admits it never owned. *See* 2-ER-49; 3-ER-451-452 at n. 13.

### M. The District Court Denied MSP Recovery's Motions for Reconsideration and for Leave to Amend

On November 29, 2021, the district court issued an order denying MSP Recovery's Motion for Reconsideration and Motion for Leave to File Third Amended Complaints. 1-ER-2-14. With respect to the motion for reconsideration, the district court explained that MSP Recovery had not demonstrated the dismissal order was based on clear error, nor had it identified any intervening change in controlling law or newly discovered evidence. 1-ER-8:20-13:15.

The district court denied MSP Recovery's motion for leave to amend based on undue delay and prejudice, noting that it "appears to have been raised as an eleventh-hour attempt to add new plaintiffs and allege additional patient exemplars after four years of litigation and two prior attempts to cure these issues through their first and second amend[ed] complaints." 1-ER-13:26-14:1. The district court further found the requested amendments would prejudice Mercury. 1-ER-14.

## STANDARDS OF REVIEW

Subject matter jurisdiction and Article III standing are questions of law that this Court reviews *de novo*. *Hajro v. U.S. Citizenship & Immigr. Servs.*, 811 F.3d 1086, 1098 (9th Cir. 2016). Factual findings on jurisdictional issues are reviewed for clear error. *Id.*

This Court reviews a district court's denial of a motion to amend a complaint for abuse of discretion. *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) ("*Chodos*"). A district court has "particularly broad" discretion to deny such motions where it has previously granted leave to amend. *Id.* When reviewing a district court's denial of leave to amend, this Court first asks whether the district court "identified and applied the correct legal rule," and then asks whether the decision resulted from "a factual finding that was illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). This Court will not reverse a district court's decision under an abuse of discretion standard unless it is "convinced firmly that the reviewed decision lies beyond the pale of reasonable justification under the circumstances." *Boyd v. City & Cnty. of San Francisco*, 576 F.3d 938, 943 (9th Cir. 2009).

**ARGUMENT**

## I. THE DISTRICT COURT'S DISMISSAL SHOULD BE AFFIRMED BECAUSE THE COURT CORRECTLY DETERMINED THAT IT LACKED SUBJECT MATTER JURISDICTION

"[N]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016), as revised (May 24, 2016). The doctrine of standing developed "to ensure that federal courts do not exceed their authority." *Id.* at 338.

The "irreducible constitutional minimum" of standing consists of showing the plaintiff: (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Lujan, 504 U.S. v. Defs. of Wildlife*, 504 U.S. 555, 560–561, 112 S.Ct. 2130 (1992) ("*Lujan*"). To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 560.

The party invoking federal jurisdiction bears the burden of establishing Article III standing. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231, 110 S. Ct. 596, 608 (1990) ("*FW/PBS*"). "And standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each

form of relief that they seek." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2207–08 (2021).

Because "[s]ubject matter jurisdiction is fundamental" and "cannot be waived, . . . the court is under a continuing duty to dismiss an action whenever it appears that the court lacks jurisdiction." *Billingsley v. Comm'r*, 868 F.2d 1081, 1085 (9th Cir. 1989); *see also* Fed. R. Civ. P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."). Accordingly, "federal courts are required *sua sponte* to examine jurisdictional issues such as standing." *Bernhardt v. Cnty. of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002) ("*Bernhardt*"). "Lack of subject matter jurisdiction can be raised by a court's own motion at any time" because "it is the duty of the federal courts to assure themselves that their jurisdiction is not being exceeded." *Csibi v. Fustos*, 670 F.2d 134, 136, n.3 (9th Cir. 1982).

## A. The District Court's Process Was Fair: The Court Notified MSP Recovery of Its Concerns Regarding Standing, and Afforded MSP Recovery Ample Opportunities to Satisfy Its Burden Prior to Dismissal

The district court's procedure for evaluating standing was more than fair to MSP Recovery. MSP Recovery had notice of issues regarding its standing even before the district court expressed its concerns during the May 7, 2021 hearing on class certification. Mercury raised the issue in its class certification briefing on

44

March 1, 2021, and MSP Recovery responded to Mercury's arguments in its reply in support of class certification on March 29, 2021. 4-ER-552:3-24, 577:7-578:7; SER-045:12-18.

Then, at the class certification hearing on May 7, 2021, the district court raised its concerns about standing, *sua sponte*, and requested additional briefing on the issue. The district court identified its concerns, including that MSP Recovery did not receive valid assignments of the recovery rights at issue.

After the hearing, MSP Recovery filed a 15-page ex-parte application requesting clarification on the district court's directives to provide additional briefing, but it did not challenge the sequence of briefing or request a reply. SER-004-019. Both sides submitted additional briefing on standing as requested by the district court. 3-ER-433, 410.

After considering the parties briefing on standing, the district court provided an opportunity for oral arguments at the continued class certification hearing on July 30, 2021. At the hearing, the district court specifically asked MSP Recovery's counsel to explain why the current holders of the assignments did not include any of the named plaintiffs. 3-ER-386:11-13, 402:23-403:10.

MSP recovery now argues the district court's procedure was unfair, asserting that instead of examining standing *sua sponte*, the court should have required Mercury to file a motion for summary judgment. AOB at 35-36. Importantly,

MSP Recovery fails to cite any legal authority for this position. None exists, because it is well settled that federal courts have a continuing obligation to *sua sponte* examine issues regarding standing, regardless of whether those specific issues are raised by the parties. Fed. R. Civ. P. 12(h)(3); *Bernhardt*, 279 F.3d at 868. Here, the district court was required to *sua sponte* examine MSP Recovery's standing to ensure it had jurisdiction to decide MSP Recovery's pending motion for class certification.

Moreover, by arguing that the district court should have required Mercury to file a summary judgment motion, MSP Recovery attempts to shift the burden to Mercury to disprove its standing. However, the burden remains at all times on the party seeking to invoke the federal court's jurisdiction to establish it has standing. *FW/PBS*, 493 U.S. at 231.

MSP Recovery incorrectly asserts that the district court unfairly deprived it of an opportunity to file a reply brief. But the district court never denied leave to file a reply; indeed, MSP Recovery never requested it, despite filing a lengthy *ex parte* application seeking "clarification" of the court's expectations for the briefing on standing. By failing to object to the briefing sequence, or requesting leave to file a reply, MSP waived its current objection to the briefing sequence.

MSP Recovery could have requested leave to file a reply when it sought clarification of the district court's order to provide supplemental briefing, but

chose not to. MSP Recovery knew how to request leave to file a reply, as it has done so repeatedly in similar cases. *See*, *e.g.*, *State Farm*, 2019 WL 4452833, at *1 (Plaintiffs requested leave to file a reply in support of their Motion to Stay or Deny Defendant's Motion for Summary Judgment); *MSP Recovery Claims Series, LLC v. Sanofi-Aventis U.S. LLC*, No. 218CV2211BRMCLW, 2021 WL 4306866, at *1 (D.N.J. Sept. 22, 2021) (Plaintiffs filed a Motion for Leave to File a Reply in further support of appeal of the Special Master's decision); *MSP Recovery Claims, Series LLC v. Nationwide Mut. Ins. Co.*, No. 2:21-CV-1901, 2022 WL 900562, at *1 (S.D. Ohio Mar. 28, 2022) (Plaintiffs moved for leave to file a sur-reply).

MSP Recovery's decision not to file a reply brief did not deprive it of the opportunity to respond to the specific standing issues raised by Mercury and the district court. MSP Recovery addressed the issues during oral argument at the continued class certification hearing on July 30, 2021. 3-ER-402:23-403:10.

In sum, the district court's procedure was fair, and MSP Recovery waived any right to challenge it. MSP Recovery is dissatisfied with its own failure to meet its burden of establishing standing, but that is not grounds to overturn the dismissals. MSP Recovery received ample opportunities to present evidence and be heard on the issue.

47

**B.     The District Court Applied the Correct Legal Standard in Evaluating MSP Recovery's Evidence**

Contrary to MSP Recovery's assertions that the district court should have applied a summary judgment standard in evaluating standing, the district court applied the appropriate evidentiary standard.  Because the elements of standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.

A Rule 12(b)(1) jurisdictional attack may be facial (challenging the sufficiency of the allegations) or factual (disputing the truth of the allegations). *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) ("*Safe Air*"). To survive a factual challenge, the party asserting federal jurisdiction "must furnish affidavits or other evidence necessary to satisfy its burden" of establishing standing.  *Id.*

The district court's consideration of evidence beyond the pleadings "does not convert the preliminary hearing on standing into a summary judgment procedure." *Am. Postal Workers Union of Los Angeles*, AFL-CIO v. U.S. Postal Serv., 861 F.2d 211, 213 (9th Cir. 1988).  "This is the preferred disposition of a standing question because '[t]he plaintiff's obligation to establish standing should

not be passed to the defendant by the simple device of waiting for a summary judgment motion.'" *Id.* (quoting 13A C. Wright, A. Miller, and E. Cooper, *Federal Practice and Procedure: Jurisdiction* 2d § 3531.15, at 99 (1984)).

To withstand dismissal, the plaintiff must "make a prima facie showing of jurisdictional facts." *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1207 (9th Cir. 2020), cert. denied, 142 S. Ct. 76 (2021). "[D]isputed allegations in the complaint that are not supported with evidence or affidavits cannot establish jurisdiction." *Id.*

Here, the district court correctly required MSP Recovery to make a *prima facie* showing of injury in fact. Specifically, MSP Recovery needed to address "whether there is evidence showing an injury-in-fact (by way of exemplar(s)) and whether this injury was caused by Defendant's improper refusal to pay." 1-ER-17, 3-ER-459. As MSP Recovery acknowledges, surviving a factual challenge to jurisdiction requires evidence to support the allegations of standing. AOB at 36-37.

## C. The District Court Correctly Determined that MSP Recovery Failed to Meet Its Burden

Ignoring the constitutional requirement of a legally protected interest, MSP Recovery argues that it must show only a concrete injury, and asserts that "[t]he fact that Plaintiffs are assignees of entities that suffered the economic injuries is immaterial." AOB, 39. But injury in fact requires a legally protected interest, in

addition to a concrete harm. *Lujan* 504 U.S.at 560. Thus, under the MSP Act, an assignee's standing to sue requires that "(1) its ultimate assignor . . . suffered an injury-in-fact, and (2) [the assignor's] claim arising from that injury was validly assigned." *MAO-MSO Recovery II, LLC v. Farmers Ins. Exch.*, No. 217CV02522CASPLAX, 2022 WL 1690151, at \*14 (C.D. Cal. May 25, 2022) ("*Farmers*"). Where standing depends on the existence of a valid assignment, the plaintiff's "failure to provide proof of such assignment is fatal to *all* of his claims." *Brown v. Bank of Am., N.A.*, 660 F. App'x 506, 509 (9th Cir. 2016) (emphasis in original).

MSP Recovery further argues that evidence of concrete injuries to its assignors is not required because its assignors' recovery rights arise by statute. AOB, 51-55. Specifically, MSP recovery argues that the Eleventh Circuit has held that "[w]hen a downstream actor bears the cost of an MAO's conditional payments," that actor suffers an injury under the MSP Act and can sue for double damages. AOB, 53 (citing *ACE*, 974 F.3d at 1316.) Even setting aside the fact that the Ninth Circuit has yet to decide the issue of whether MAOs and downstream entities can avail themselves of the MSP Act's private cause of action (further discussed at section III, *infra*), MSP Recovery is incorrect, because a statutory right is insufficient to confer constitutional standing. *Spokeo,* 578 U.S. at 339, 41.

The United States Supreme Court has expressly rejected the proposition that "a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo,* 578 U.S. at 339. "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 441. Thus, "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Id.* at 339.

Here, the district court correctly determined that MSP Recovery failed to produce evidence to support that its assignors suffered concrete harm and validly assigned their recovery rights to MSP Recovery, as further discussed below.

### 1. The district court correctly limited its standing inquiry to the alleged exemplars, which did not support standing

In this case, because the district court raised a factual challenge to MSP Recovery's allegations of standing, it appropriately limited its examination to the exemplars pled in the operative complaints. *See Safe Air*, 373 F.3d at 1039 ("in a factual attack, the challenger disputes the truth of the allegations" in the complaint).

The plaintiff must "clearly . . . allege facts demonstrating" each element of standing. *Warth v. Seldin*, 422 U.S. 490, 518, 95 S.Ct. 2197 (1975). Those elements "are not mere pleading requirements," however. *Lujan,* 504 U.S. at 561.

The plaintiff must ultimately support the allegations with evidence and prove them at trial.  *Id.*

MSP Recovery argues the district court erred in not considering additional unpled exemplars, asserting, "[t]he court confused the *Lujan* requirement that injuries must exist at the time of filing . . . with a non-existent requirement that injuries be specifically alleged in the complaint."  AOB, 30.  MSP Recovery ignores Supreme Court precedent explaining that the elements of standing are "pleading requirements" and that a plaintiff must clearly allege facts demonstrating each element.

As discussed below, MSP Recovery admits that it does not own the recovery rights for either of the two alleged exemplar beneficiaries, J.R. and D.M.  In addition, MSP Recovery's own evidence failed to support that Trinity – the purported assignor of the D.M. recovery rights – actually owned the rights it attempted to assign.

> a. ***MSP Recovery admits – and its evidence demonstrates – that no party owns recovery rights for either J.R. or D.M.***

MSP Recovery admits it does not own the recovery rights for exemplar J.R.  As explained in MSP Recovery's opening brief, "the assignment from PMPI validly assigned the non-reimbursement claims, but the ultimate assignee was MAO-MSO Recovery II, LLC, Series PMPI, not MAO-MSO Recovery II, LLC, as

the complaint incorrectly alleged." AOB, 44. Indeed, MSP Recovery's own documents demonstrate that Series PMPI, which is not a named plaintiff in either lawsuit, had obtained the PMPI recovery rights on August 8, 2016, and still owned them when MSP Recovery filed the underlying district court action on May 31, 2017. 7-ER-1190.

MSP Recovery further admits that no named plaintiff company owns the recovery rights for exemplar D.M. MSP Recovery's own documents show that Series 15-11-371, LLC, which is not a party to either lawsuit, had obtained the Trinity recovery rights on May 31, 2017, and still owned them when MSP Recovery filed the underlying district court action on April 3, 2017. 7-ER-1127.

MSP Recovery argues that Plaintiff MSP Recovery Claims, Series LLC is a parent company to subsidiary "Series 15-11-371, LLC," which owns the Trinity recovery rights that pertain to exemplar D.M., and therefore MSP Recovery Claims, Series LLC is entitled to assert recovery the Trinity recovery rights. AOB, 46-47. However, MSP Recovery fails to cite any controlling authority permitting them to assert rights owned by subsidiary series LLCs that are not named parties to the litigation. *See id.* In the absence of controlling authority, the district court disagreed with MSP Recovery's position and applied non-binding case law holding that MSP Recovery lacked standing to sue on behalf of its series LLCs. 1-ER-

53

24:3-11 (citing *USAA*, 2018 WL 5112998 at \*12; *New York Central*, 2019 WL 4222654 at \*5–6.

Importantly, even the non-binding cases that have permitted a parent LLC to sue on behalf of a subsidiary "series LLC" make clear that this right does not exist unless expressly provided in the parent LLC's operating agreement. *See*, *e.g.*, *MSP Recovery Claims, Series LLC v. Merchants Mut. Ins. Co.*, No. 1:19-CV-524-JLS-JJM, 2020 WL 8675835, at \*6 (W.D.N.Y. Nov. 20, 2020) ("plaintiffs' evidentiary submission satisfies their burden to demonstrate that MSP Series is a proper party because it retained in its Operating Agreement the right to sue on behalf its series").

MSP Recovery acknowledges that the rights must be provided in the parent LLC's operating agreement. 2-ER-210; 3-ER-403:17-404:6. Yet MSP Recovery failed to provide any operating agreements for the district court's consideration prior to dismissal. Thus, regardless of whether it is theoretically possible for Plaintiff MSP Recovery Claims, Series LLC to assert the recovery rights owned by Series 15-11-371, LLC under Ninth Circuit law, MSP Recovery failed to produce the required evidence to support entitlement to bring those claims, and failed to meet its burden of demonstrating standing.

Aware that it failed to meet its evidentiary burden, MSP Recovery argues that the question of whether named plaintiff MSP Recovery Claims, Series LLC

has standing to sue on behalf of its series LLC "is not a question that implicates Article III standing," but is instead "subject to a Rule 17(a) real-party-in-interest challenge." AOB, 49. MSP Recovery lacks legal authority for this position. Moreover, the dismissal order is clear that the district court dismissed the action based on the named plaintiff companies' lack of standing, not based on a failure to join additional parties under Rule 17.

> **b.** *MSP Recovery lacks standing to pursue recovery for D.M. for the additional reason that its evidence failed to show that Trinity owned the recovery rights it purported to assign*

MSP Recovery argues that "downstream entities" such as Trinity "that accept the 'risk of loss' in contracting with an MAO acquire the MAO's reimbursement rights and may sue under the MSP Act to recover their own unreimbursed secondary payments." AOB, 51. But to establish an injury in fact, MSP Recovery needed to provide evidence that Trinity accepted the risk of loss, and it failed to do so. According to MSP Recovery's own evidence, Trinity did not own the recovery rights it sought to assign. 1-ER-21:15-26. MSP Recovery submitted a Group Participation Agreement between Trinity and Freedom Health Care, which it contends evidences a risk transfer. AOB 52 (citing 8-ER-1424, 1503-680). However, the district court reviewed that document and correctly determined it evidenced a *lack* of standing. 1-ER-21.

Over one month after the actions were dismissed, in a desperate attempt to come up with evidence transferring risk of nonpayment to Trinity, MSP Recovery moved for reconsideration and submitted an additional document titled "Attachment D-1," which it contends is an attachment to the Trinity Group Participation Agreement. 3-ER-233, ¶ 9. But that document was not before the district court when it made its decision, despite MSP Recovery being on notice that it needed to support its standing allegations with evidence. The Ninth Circuit limits its review "to the facts before the district court at the time it made its ruling," and does not consider post-judgment evidence because "documents submitted to the district court after it made the ruling challenged on appeal are excluded from the record." *Henry v. Adventist Health Castle Med. Ctr.*, 970 F.3d 1126, 1128 (9th Cir. 2020).

In sum, the evidence on which MSP Recovery now relies was not before the district court prior to dismissal. MSP Recovery has failed to show the district court erred in finding a lack of evidence to support standing.

## 2. The unpled exemplars could not confer standing because no party owned those recovery rights at the time of filing

Despite the requirement that facts demonstrating standing must be clearly alleged in the complaint, the district court also considered MSP Recovery's unpled exemplars. The court correctly determined they could not confer standing because

no party had received the assignments of those recovery rights at the time the complaints were filed.  1-ER-23-24.

"[S]tanding is determined as of the commencement of litigation."  *Yamada v. Snipes*, 786 F.3d 1182, 1203 (9th Cir. 2015).  Thus, "[t]he party invoking the jurisdiction of the court cannot rely on events that unfolded after the filing of the complaint to establish its standing."  *Id.* at 1204; *see also Lujan*, 504 U.S. at 57, n. 4).

MSP Recovery acknowledges that binding Supreme Court precedent requires jurisdictional facts to exist when the lawsuit is filed.  AOB, 41.  However, MSP Recovery argues that the precedent should not apply here, citing *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1046.  AOB, 41-42.

MSP Recovery misreads *Northstar*.  In that case, the Ninth Circuit explained that courts may exercise subject matter jurisdiction where a Rule 15(d) supplemental complaint alleges facts curing jurisdictional defects of the original complaint.  *Northstar*, 858 F2d at 1376.  *Northstar* does not apply here because MSP Recovery never filed a Rule 15(d) supplemental pleading.  Indeed, MSP Recovery did not even file a motion for leave to amend until over one month after the lawsuits were dismissed, and that motion was denied.  2-ER-27.  Thus, as the district court explained, "unpled allegations cannot circumvent the requirement

that standing exist when the lawsuits were filed." 1-ER-23:11-12, citing *Lujan*, 504 U.S. at 571, n.4.

The district court correctly determined that no party had received assignments of recovery rights for the unpled exemplar beneficiaries at the time the complaints were filed. 1-ER-23-24. According to MSP Recovery's own documents, at the time of filing the owner of the recovery rights for assignors Verimed, Emblem Health, HFHP, and FPG was non-party MSP Recovery, LLC. 7-ER-1130, 1137 (Verimed); 7-ER-1164-1166, 1167 (Emblem Health); 7-ER-1140, 1153 (HFHP); 7-ER-1170, 1181 (FPG).

### 3. MSP Recovery lacks standing to pursue any claim for the additional reason that it failed to provide any admissible evidence of Part C enrollment, conditional payments, or demonstrated payment responsibility

The district court correctly raised a *sua sponte* factual challenge to MSP Recovery's allegations of standing and the summary judgment standard does not apply under these circumstances, as discussed above. MSP Recovery nevertheless invites this Court to apply the Rule 56 summary judgment standard to evaluate whether it met its evidentiary burden of establishing standing under that standard. AOB, 38. Even assuming for the sake of argument that the summary judgment standard applies, MSP Recovery's evidence falls far short of satisfying that standard.

To survive summary judgment on standing grounds, MSP Recovery must "adduce admissible evidence that the payments for which they seek reimbursement were made to compensate medical providers for the reasonable and necessary treatment of injuries sustained by Medicare beneficiaries in automobile accidents covered by one of defendants' insurance policies." *Farmers*, 2022 WL 1690151, at *14. In *Farmers*, MSP Recovery failed to meet its burden of establishing standing at the summary judgment stage. *Id.* In *Farmers*, as in this case, MSP Recovery failed to "put forth any evidence, let alone admissible evidence, showing that plaintiffs' assignors made payments to compensate medical providers for treatment for injuries sustained by Medicare beneficiaries in auto accidents covered by one of the defendants' insurance policies." *Id.* at *12. MSP Recovery did not submit "copies of the bills that their assignors received, copies of documents evidencing the payments their assignors made, or even accounting ledgers that would establish whether their assignors made any covered payments." *Id.*

MSP Recovery submitted "spreadsheets created by plaintiffs or their counsel that contain certain data plaintiffs state they use to identify assignors and enrollees, and codes for alleged types of treatment and diagnoses, service dates, and numbers for the dollar amounts the assignors supposedly paid." *Id.* at *6. However, those spreadsheets "are inadmissible hearsay statements because they allegedly

59

summarize out-of-court statements made by third-parties, namely the assignors, offered to prove the truth of the matter asserted, *i.e.*, that payments were made by plaintiffs' assignors for claims that should be reimbursed by defendants." *Id.* at *12.

The court in *Farmers* noted that even if it were to consider MSP Recovery's inadmissible spreadsheets, they were insufficient to raise a triable issue of fact with respect to the "demonstrated payment responsibility" element of MSP Recovery's cause of action. *Id.* at *13. "Plaintiffs' spreadsheets do not establish, for example, the identity of the recipient of the payments contained therein, that the payments at issue arose from automobile accidents, or that the payments for which they seek reimbursement were "conditional" payments." *Id.* Moreover, Plaintiffs' evidence did not reflect that Medicare beneficiaries were enrolled in Part C plans at the times the alleged payments for services were made. *Id.* at *6.

In this case, MSP Recovery's evidence fails for the same reasons as in *Farmers*: in addition to the defects in the assignment chains, MSP Recovery lacks admissible evidence of Part C plan enrollment, conditional payments by its assignors, Mercury's responsibility to pay for the medical services at issue, and Mercury's failure to pay for a reason prohibited by the MSP Act. Thus, even applying a summary judgment standard as sought by MSP Recovery, the district

court correctly dismissed the actions based on MSP Recovery's failure to submit admissible evidence to create a triable issue on standing.

## II. THE DISTRICT COURT ACTED WELL WITHIN ITS DISCRETION IN DENYING MSP RECOVERY'S UNTIMELY MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINTS

Pursuant to Rule 15(a)(2), courts are to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "In deciding whether justice requires granting leave to amend, factors to be considered include the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989) ("*Moore*").

### A. The District Court Had "Particularly Broad" Discretion to Deny Leave to Amend Because MSP Recovery Had Already Amended Its Complaints Twice

A trial court's discretion to deny a motion for leave to amend is "particularly broad" where it has previously granted leave to amend. *Chodos*, 292 F.3d at 1003. Because MSP Recovery had previously amended both underlying complaints, twice, and still lacked standing, the district court had particularly broad discretion to deny MSP Recovery's motion for leave to file third amended complaints.

**B.    The District Court Appropriately Denied Leave to Amend Based on Undue Delay and Prejudice to Mercury**

The district court acted well within its broad discretion in denying MSP Recovery's motion for leave to amend based on undue delay and prejudice.  MSP Recovery forced Mercury to defend the underlying actions for over four years and through extensive discovery, despite the fact that MSP Recovery did not own the rights asserted.

After conducting discovery on claims it had no right to pursue, MSP Recovery waited to seek leave to allege new claims until *after* the actions were dismissed.  As the district court explained, "Plaintiffs' motions for leave to amend were not filed until more than a month after the August 13, 2021 Order was issued and more than two weeks after Plaintiffs filed their motions for reconsideration," and "Plaintiffs fail to provide any explanation or reasoning for this delay in filing." 1-ER-13:23-26.  "Indeed, Plaintiffs' request for leave to amend appears to have been raised as an eleventh-hour attempt to add new plaintiffs and allege additional patient exemplars after four years of litigation and two prior attempts to cure these issues through their first and second amend[ed] complaints."  1-ER-13:26-14:1. The district court further found the requested amendments would prejudice Mercury, since it would essentially have to restart the entire litigation after the matters were previously dismissed, and defend itself based on a new set of operative facts, despite the four years of prior litigation.  1-ER-14.  Because the

62

district court dismissed the actions based on undue delay and prejudice, it did not need to address whether the amendment was futile or sought in bad faith. 1-ER-14.

MSP Recovery asserts there was no undue delay because it mentioned the possibility of amendment in its standing brief, and it argues that the lack of a formal motion to amend does not preclude the district court from granting it. AOB at 59. However, MSP Recovery does not contend that a district court abuses its discretion when it declines to grant leave to amend absent a motion for such leave, nor does it offer any legal support for such a position. MSP Recovery has failed to meet its burden of establishing an abuse of discretion by the district court.

## C. By Focusing on Futility of Amendment, MSP Recovery Seeks to Apply the Wrong Legal Standard

When applying a futility analysis, "[d]ismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment." *Corinthian Colleges*, 655 F.3d at 995 (emphasis added); *see also Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010) (Ninth Circuit will uphold denial on futility grounds if "it is clear, upon de novo review, that the complaint would not be saved by any amendment").

MSP Recovery argues the district court should not have dismissed the actions without leave to amend unless the pleading could not be cured by amendment. AOB, 44. In arguing futility of amendment is required for dismissal

63

without leave to amend, MSP Recovery relies on *Navajo Nation v. U.S. Dep't of the Interior*, 26 F.4th 794, 805 (9th Cir. 2022). AOB, 32. But that case does not support MSP Recovery's position because it held that the district court abused its discretion in denying leave to amend *based on futility* where it erroneously concluded that amendment would be futile, based on a legal error. *Navajo Nation*, 26 F.4th at 814. Here, in contrast, the district court denied leave to amend based on undue delay and prejudice, not futility. Applying a futility standard to require leave to amend even in cases of undue delay and prejudice would effectively remove those factors from the district court's consideration, in violation of Ninth Circuit precedent requiring that courts consider them. *See, e.g., Moore*, 885 F.2d at 538.

### D. The District Court Did Not Abuse Its Discretion in Denying Leave to File a Rule 15(d) Supplemental Pleading Alleging Post-Filing Events

Because standing is determined as of the commencement of litigation, a plaintiff cannot satisfy the requirements of standing by amending or supplementing its complaint to add events that occurred after it filed the action. *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017).

MSP Recovery also relies on *Northstar* to argue the district court "overlooked this Court's requirement that district courts should allow Rule 15(d) supplemental amendments to cure standing defects." AOB, 30. But again, MSP

Recovery misreads *Northstar*, which holds that the general rule against subsequent events conferring subject matter jurisdiction that was lacking at the outset of litigation "does not extend to supplemental pleadings filed pursuant to Fed.R.Civ.P. 15(d)." *Northstar*, 779 F.3d at 1046. While *Northstar* held that a district court did *not* abuse its discretion in *permitting* a supplemental pleading, MSP Recovery offers no authority to support that a district court abuses its discretion by denying leave to file a supplemental pleading to cure standing defects under the circumstances of this case. *See Northstar*, 779 F.3d at 1048.

### E. The District Court Did Not Abuse Its Discretion in Denying MSP Recovery's Request for Leave to Join a New Party

After over four years of litigating claims it did not own, MSP Recovery now attempts to frame its lack of standing as a mere "ministerial or technical defect" requiring only a "technical amendment" of joining an additional party. AOB, 56; 3-ER-451-452 at n. 13.

In arguing the district court should have granted leave to join a new plaintiff, MSP Recovery suggests the actions were dismissed for failure to join a real party in interest under Rule 17 (which permits an opportunity to substitute the correct party before dismissing the case based on failure to prosecute in the name of the real party in interest). AOB, 49. But the district court's order is clear: the actions were dismissed because no party had standing to pursue the claims asserted, not

based on Rule 17. 1-ER-15-25. Moreover, MSP Recovery did not invoke Rule 17 in its motion for leave to amend. *See* 2-ER-27-47.

In any event, Rule 17 does not help MSP Recovery because it "isn't a plenary license" to cure pleading defects. *In re Engle Cases*, 767 F.3d 1082, 1113 (11th Cir. 2014). "[W]hen the determination of the right party to bring the action was not difficult and when no excusable mistake had been made, then Rule 17(a)(3) is not applicable and the action should be dismissed." *Id.* at 1109. And where the named plaintiff lacks Article III standing, a separate entity with standing which was not vigilant in protecting its claims cannot use Rule 17 to benefit from the mistake and take advantage of the suspension of the limitations period. *Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 532 (6th Cir. 2002).

For example, where litigants failed during five years of litigation to move to amend their complaint to add a plaintiff with standing, "the district court did not abuse its discretion when it *sua sponte* dismissed these claims without providing the employees an opportunity to amend their complaint to add plaintiffs with standing." *Hammond v. Reynolds Metals Co.*, 219 F. App'x 910, 915 (11th Cir. 2007); *see also Automated Info. Processing, Inc. v. Genesys Sols. Grp., Inc.*, 164 F.R.D. 1, 3–4 (E.D.N.Y. 1995) ("justice would not be served if the plaintiffs were rewarded for their failures, oversights and misrepresentations by permitting an amendment of their pleadings where it is otherwise unwarranted by the rules").

66

Here, as in *Hammond*, the district court did not abuse its discretion in denying leave to join a plaintiff with standing after over four years of litigation. The dismissals should be affirmed.

## III. THE DISMISALS SHOULD BE AFFIRMED ON THE ADDITIONAL BASIS THAT MSP RECOVERY'S ASSIGNORS CANNOT ASSERT THE MSP ACT'S PRIVATE CAUSE OF ACTION, AS A MATTER OF LAW

The district court correctly determined that MSP Recovery failed to meet its burden of establishing subject matter jurisdiction, as discussed above. But even if the district court erred in reaching that decision, this Court should affirm the dismissals on the separate ground that MSP Recovery failed to state a claim that would entitle them to relief because the MSP Act's private cause of action is not available to MSP Recovery's assignors as a matter of law.

This Court "can affirm the district court on any basis supported by the record." *Wood v. City of San Diego*, 678 F.3d 1075, 1086 (9th Cir. 2012). The Ninth Circuit has applied this principle to affirm on the merits orders that dismissed actions on jurisdictional grounds. *See id.* For example, in *Wood*, the district court dismissed the appellant's claim for lack of Article III standing and the Ninth Circuit affirmed "because, even assuming she has Article III standing, her claim fails as a matter of law." *Id.* at 102, 1086. Similarly, in *Tritz v. U.S. Postal Serv.*, 721 F.3d 1133, 1139, 1142 (9th Cir. 2013), the district court erroneously dismissed a claim for lack of subject matter jurisdiction and the Ninth Circuit

affirmed the dismissal on the separate ground that the plaintiff failed to state a claim that would entitle her to relief.

### A.      The MSP Act's Private Cause of Action Does Not Give MAOs a Federal Right of Action and Double-Damages Remedy

The MSP Act's private cause of action "was intended to allow private parties to vindicate wrongs occasioned by the failure of primary plans to make payments."  *Parra*, 715 F.3d at 1154–55; *see also Humana Med. Plan, Inc. v. Western Heritage Ins. Co.*, 880 F. 3d 1284, 1288 (Mem.) (11th Cir. 2018) ("*Humana*") (Tjoflat, J., dissenting) ("Congress also gave individuals who receive Medicare benefits a right to sue primary payers who fail to pay or reimburse the expenses for which they are responsible").

Statutory words must be interpreted "not in a vacuum, but with reference to the statutory context."  *Torres v. Lynch*, 578 U.S. 452, 459, 136 S. Ct. 1619, 1626, (2016).  The private cause of action provision, 42 U.S.C. § 1395y(b)(3)(A), provides:

> [t]here is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) ***in accordance with paragraphs (1) and (2)(A).***

42 U.S.C. § 1395y(b)(3)(A) (emphasis added). Thus, it is specifically limited by its references to "paragraphs (1) and (2)(A)." *See Humana*, 832 F. 3d at 1240-41 (Pryor, J., dissenting); *Humana*, 880 F. 3d at 1290 (Mem.) (Tjoflat, J., dissenting).

The referenced "paragraph (1)," entitled "Requirements of group health plans," prohibits group health plans from denying Medicare benefits on the basis of an individual's Medicare eligibility. 42 U.S.C. § 1395y(b)(1). Paragraph (2)(A), which is part of the MSP Act's "secondary payer" provision, "addresses only payment by the Government out of the Government's coffers." *Humana*, 880 F. 3d at 1290 (Mem.) (emphasis in original) (Tjoflat, J., dissenting). Paragraph (2)(A) also prohibits Medicare from making payments "except as provided in subparagraph (B)." *Id.* The exception in subparagraph (2)(B), however, applies only when the Secretary makes a payment "conditioned on reimbursement *to the appropriate Trust Fund*." *See* 42 U.S.C. § 1395y(b)(2)(B) (emphasis added).

The MSP Act's private cause of action provision, 42 U.S.C. § 1395y(b)(3)(A), does not include the Government's conditional payment provisions and related remedies, all of which are contained within the MSP Act's secondary payer provision, at § 1395y(b)(2)(B). Paragraph (2)(B) contains no reference to Medicare Advantage Organizations. "An MAO is not the Secretary of Health and Human Services, and it does not make payments out of the Medicare Trust Funds." *Humana*, 880 F. 3d at 1291 (Mem.) (Tjoflat, J., dissenting). "[T]his

69

should be the end of the matter: when an MAO seeks reimbursement from a liability insurer and the liability insurer fails to pay, the liability insurer has not "fail[ed] to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A)." *Id.* § 1395y(b)(3)(A) (emphasis added).

## B. The Medicare Advantage Statutes Do Not Give MAOs a Federal Right of Action or Double-Damages Remedy

When Congress enacted Medicare Part C in 1997, it created a separate statutory scheme that speaks directly to the rights and responsibilities of MAOs. *See* 42 U.S.C. §§ 1395w-21 through 1395w-28 ("Part C"). Part C does not contain an enforcement provision equivalent to either the MSP Act's private cause of action provision, section 1395y(b)(3)(A), or the Government's enforcement provision, section 1395y(b)(2)(B)(ii). Instead, it contains an MAO-specific "secondary payer" provision, also known as a "right-to-charge" provision, which authorizes MAOs to charge primary plans "under circumstances in which payment . . . is made secondary pursuant to section 1395y(b)(2)." 42 U.S.C. § 1395w-22(a)(4).

As this Court has explained, Part C's secondary payer provision simply allows an MAO "to provide via its contracts that its insurance is secondary to other available plans and allows recovery from a primary plan that refuses to reimburse the MAO for payments made on behalf of a participant." *Parra*, 715 F.3d at 1154.

70

"[T]he MAO's claim thus arises by virtue of its decision to include provisions allowing such recovery in its contract with plan participants." *Id.*

Part C's secondary payer provision does not create a federal right of action for MAOs, even though it cross-references the MSP Act's cause of action in favor of the United States at § 1395y(b)(2)(B)(iii). *Id.* This cross-reference "simply explains when MAO coverage is secondary to a primary plan . . . that is, under the same circumstances when insurance through traditional Medicare would be secondary." *Id.* It "defines when MAO coverage is secondary, and does not create a federal cause of action in favor of a MAO." *Id.*

Rather than subjecting MAOs to all parts of the MSP Act's secondary payer provision, the MAO-specific "secondary payer" provision establishes a different regulatory regime for MAOs—one that does not require MAOs to be secondary payers, does not impose time limits on reimbursement, does not create a disclosure mechanism related to primary plans, and does not establish a right of appeal and appeal procedures for challenging secondary payer status. *See Humana*, 832 F. 3d at 1242 (Pryor, J., dissenting). There would be no reason for Congress to create secondary payer status and related remedies for MAOs in Part C if MAOs already held that status and possessed those remedies under the MSP Act. Congress chose to regulate MAOs and traditional Medicare differently, and it chose not to include

71

a private cause of action in Part C after including one in the MSP Act a decade
earlier.

### C. Congress Had No Reason to Give MAOs a Federal Right of Action and Double-Damages Remedy and, in the Process of Doing So, Displace State Law Remedies that Congress Preserved for MAOs

Under traditional Medicare, the Government pays for services "directly out
of its own coffers – namely, the Medicare Trust Funds," and it assumes the risk
"that [a] primary payer will delay or avoid repayment of the public's funds."
*Humana*, 880 F. 3d at 1291 (Mem.) (Tjoflat, J., dissenting).

If the Government makes a conditional payment, it cannot avail itself of its
double-damages remedy under § 1395y(b)(2)(B) unless it uses the statutorily
prescribed debt-recovery procedures, with their associated administrative
procedures, time limitations, disclosure mechanisms, appeal rights, and appeal
procedures. *See* 42 U.S.C. §§1395y(b)(2)(B)(ii–viii).

In contrast, MAOs pay claims from their own funds. *Humana*, 880 F. 3d at
1291-92 (Mem.) (Tjoflat, J., dissenting). However, MAOs have more flexibility to
manage benefits administration. MAOs are not compelled to make secondary
payments, and if they choose to make them, "[f]ederal law simply says that [an
MAO] '*may* . . . charge' the primary payer thereafter." *Id.* at 1292, citing 42
U.S.C. § 1395w-22(a)(4)(A) (emphasis in original).

MAOs may sue to collect reimbursement without following the statutory debt-collection procedures applicable to the Government. "Indeed, nothing in the MSP Act or the Medicare Advantage program alters MAOs' state law rights to be subrogated to the rights of their insureds – to obtain reimbursement from the third-party tortfeasor's insurer *or* the tortfeasor himself." *Humana*, 880 F. 3d at 1292 (Mem.) (Tjoflat, J. dissenting) (emphasis in original). The language of Part C not only specifically preserves and codifies common law subrogation and reimbursement rights for private insurers acting as MAOs, it also "preempts any state law provisions that abridge the codified right of MAOs to seek reimbursement." *Id.* at 1295.

"[T]he private right of action provides for double damages in order to do two things: first, dissuade primary payers from shirking their payment responsibilities; and second, protect either the Government (where the Government has elected to pay expenses conditioned on reimbursement) or the beneficiary (where the Government has elected not to pay those expenses), depending on who was harmed by the delinquency." *Id.* at 1293. But the analysis is different with MAOs. Allowing MAOs to collect double damages under the MSP Act's private cause of action would result in a windfall to MAOs that Congress did not intend.

The Medicare trust funds are insulated from a primary payer's failure reimburse an MAO, because "the contractual relationship between the Government

and MAOs shift the financial risk away from the public fisc and toward the MAOs' business objectives." *Id.* at 1293. Because MAOs are not required to make conditional payments, allowing them "to recover double damages against a primary payer that refuses to reimburse them for payments the MAOs elected to make—notwithstanding MAOs' legal right to refuse to pay in the first place—simply creates a windfall for MAOs that do elect to pay." *Id.*

For all of these reasons, the Court should conclude that MAOs do not have a federal right of action for reimbursement and a related double-damages remedy under the MSP Act's private cause of action provision, 42 U.S.C. § 1395y(b)(3)(A), and affirm the district court's dismissals on this alternative basis.

## **CONCLUSION**

MSP Recovery has failed to establish that the district court erred in dismissing the underlying actions for lack of Article III standing or that it abused its discretion in denying leave to file third amended complaints based on undue delay and prejudice to Mercury. Moreover, as an alternative basis to affirm the dismissal, MSP Recovery failed to state a claim for relief because its assignors cannot assert the MSP Act's private cause of action as a matter of law. For all of the foregoing reasons, this Court should affirm the district court's dismissal of the underlying actions.

Dated:  July 15, 2022    Respectfully submitted,

            GORDON REES SCULLY
            MANSUKHANI, LLP

            By: */s/ Adelle Greenfield*
               Adelle Greenfield
               Attorneys for Defendant and Appellee,
               Mercury General Corporation

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Ninth Circuit Rule 28-2.6, this case is related to *MAO-MSO Recovery II, LLC, et al. v. Mercury General*, Ninth Circuit Court of Appeals Case No. 21-56396. These cases should be deemed related because they raise the same or closely related issues. Both appeals involve the same parties and identical District Court orders being appealed.

Dated: July 15, 2022                         Respectfully submitted,

GORDON REES SCULLY
MANSUKHANI, LLP

By: */s/ Adelle Greenfield*
    Adelle Greenfield
    Attorneys for Defendant and Appellee,
    Mercury General Corporation

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 21-56395

I am the attorney or self-represented party.

**This brief contains** | 13,915 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*

    ○ it is a joint brief submitted by separately represented parties;

    ○ a party or parties are filing a single brief in response to multiple briefs; or

    ○ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated _____.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Adelle Greenfield | **Date** | Jul 19, 2022

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**      *Rev. 12/01/2018*