**No. 21-56395**

# United States Court of Appeals

*for the*

# Ninth Circuit

MAO-MSO Recovery II, LLC,
MSP Recovery Claims, Series LLC, and
MSPA Claims 1, LLC
*Plaintiffs — Appellants*,
v.
Mercury General Corp.
*Defendant — Appellee.*

**On Appeal from the United States
District Court for the Central District of California
Case No. 17-cv-02525-AB
Case No. 17-cv-02557-AB**

**APPELLANTS' REPLY BRIEF**

Andrés Rivero
Alan H. Rolnick
**Rivero Mestre LLP**
2525 Ponce de León Boulevard
Suite 1000
Miami, Florida 33134
(305) 445-2500

Martha A. Geer
Mark Silvey
**Milberg Coleman Bryson
Phillips Grossman PLLC**
900 West Morgan Street
Raleigh, North Carolina 27603
(919) 600-5000

*Counsel for Plaintiffs*

## TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................... ii

TABLE OF AUTHORITIES ............................................................... iv

INTRODUCTION ............................................................................... 1

ARGUMENT ....................................................................................... 1

I. THE UNDISPUTED EVIDENCE ESTABLISHES STANDING ............. 1

    A. Mercury's New *Spokeo* Argument is Baseless ................................. 1

    B. The Trial Court's Procedure in Addressing Standing Failed to Comply with Controlling U.S. Supreme Court and Ninth Circuit Authority ..................................................... 3

    C. Mercury's Brief Fails to Rebut Plaintiffs' Evidence of Standing ............................................................... 9

    D. Mercury Also Has Failed to Rebut Plaintiffs' Proof of Standing with Respect to the D.M. and J.R. Examples Alleged in the SAC ........................................... 15

    E. Mercury's After-the-Fact Evidentiary Argument is Improper ....................................................... 17

II. MERCURY'S FAILURE TO DEMONSTRATE PREJUDICE FROM ALLOWING LEAVE TO AMEND REQUIRES REVERSAL ........................................................ 20

    A. Mercury Urges Application of the Wrong Standard .................... 20

    B. Mercury Misrepresents the Record in Arguing Undue Delay ..... 21

    C. Mercury's New "Futility" Argument Does Not Support Affirmance of the District Court's Denial of Leave to Amend .... 23

    D. Mercury Has Made No Effort to Demonstrate Prejudice ........... 24

III. MERCURY'S FAILURE TO CROSS-APPEAL NEGATES ITS DEMAND TO REVERSE THE DISTRICT COURT'S RULING THAT MSP'S ASSIGNORS CAN ASSERT A PRIVATE CAUSE OF ACTION UNDER THE MSP ACT ....................................... 25

**A.**     **No Jurisdiction Exists over Mercury's Argument** ........................ **25**

**B.**     **Courts Agree that MAOs Have a Right to Sue Under the MSP Act's Private Cause of Action** ........................................... **27**

**CONCLUSION** ................................................................................ **29**

<u>**TABLE OF AUTHORITIES**</u>

<u>**Page(s)**</u>

<u>**Cases**</u>

*Alabama Legislative Black Caucus v. Alabama,*

    575 U.S. 254 (2015) ..................................................................... 11

*Am. Postal Workers Union of Los Angeles, AFL-CIO v. U.S. Postal Serv.,*

    861 F.2d 211 (9th Cir. 1988) ..................................................... 4, 6

*Augustine v. United States,*

    704 F.2d 1074 (9th Cir. 1983) ...................................................... 9

*Chodos v. W. Publ'g Co.,*

    292 F.3d 992 (9th Cir. 2002) ...................................................... 21

*DCD Programs, Ltd. v. Leighton,*

    833 F.2d 183 (9th Cir. 1987) ...................................................... 25

*Gill v. Whitford,*

    138 S. Ct. 1916 (2018) ............................................................... 11

*Greene v. Solano Cnty. Jail,*

    513 F.3d 982 (9th Cir. 2008) ........................................................ 7

*Henry v. Adventist Health Castle Med. Ctr.,*

    970 F.3d 1126 (9th Cir. 2020) .................................................... 16

*Humana Ins. Co. v. Bi-Lo, LLC,*

    2019 WL 4643582 (D.S.C. Sept. 24, 2019) ............................... 28

*Humana Ins. Co. v. Paris Blank LLP,*

    187 F. Supp. 3d 676 (E.D. Va. 2016) ........................................ 28

iv

*Humana Med. Plan, Inc. v. Western Heritage Ins. Co.*,

 832 F.3d 1229 (11th Cir. 2016) ............................................................. 26, 28

*Humana Med. Plan, Inc. v. Western Heritage Ins. Co.,*

 880 F. 3d 1284 (Mem.) (11th Cir. 2018) ..................................................... 28

*In re Avandia Mktg., Sales Practices, & Prods. Liab. Litig.*,

 685 F.3d 353 (3d Cir. 2012) .................................................................. 26, 28

*In re Bernal*,

 207 F.3d 595 (9th Cir. 2000) ........................................................................ 12

*Inland Empire Waterkeeper v. Corona Clay Co.*,

 17 F.4th 825 (9th Cir. 2021) .......................................................................... 2

*Jennings v. Stephens*,

 574 U.S. 271 (2015) ...................................................................................... 26

*MAO-MSO Recovery II, LLC v. Farmers Ins. Exch.*,

 2022 WL 1690151 (C.D. Cal. 2022) ................................................ 17, 19, 28

*MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*,

 994 F.3d 869 (7th Cir. 2021) ................................................................... 4, 28

*Mecinas v. Hobbs*,

 30 F.4th 890 (9th Cir. 2022) .......................................................................... 8

*MRT Const. Inc. v. Hardrives, Inc.*,

 158 F.3d 478 (9th Cir. 1998) ........................................................................ 19

*MSP Recovery Claims, Series LLC v. ACE Am. Ins. Co.*,

 974 F.3d 1305 (11th Cir. 2020) .................................................................... 28

*MSP Recovery Claims, Series LLC v. Metropolitan General Ins. Co.*,

  40 F.4th 1295 (11th Cir. 2022) ................................................................ 18, 28

*MSP Recovery, LLC v. Allstate Ins. Co.*,

  835 F.3d 1351 (11th Cir. 2016) ...................................................................... 28

*MSPA Claims 1, LLC v. Tenet Fla., Inc.*,

  918 F.3d 1312 (11th Cir. 2019) ........................................................................ 2

*MSPA Claims 1, LLC v. Tower Hill Prime Ins. Co.*,

  2022 WL 3223801 (11th Cir. Aug. 10, 2022) ............................................. 28

*Norse v. City of Santa Cruz*,

  629 F.3d 966 (9th Cir. 2010) ...................................................................... 6, 7

*Northstar Fin. Advisors Inc. v. Schwab Invs.*,

  779 F.3d 1036 (9th Cir. 2015) ......................................................................... 23

*Nw. Airlines, Inc. v. Cnty. of Kent, Mich.*,

  510 U.S. 355 (1994) .......................................................................................... 27

*Parra v. PacifiCare of Arizona, Inc.*,

  715 F.3d 1146 (9th Cir. 2013) ................................................................... 28, 29

*Safe Air for Everyone v. Meyer*,

  373 F.3d 1035 (9th Cir. 2004) ...................................................................... 4, 5

*Spokeo, Inc. v. Robins*,

  578 U.S. 330 (2016) ............................................................................................ 2

*Tritz v. U.S. Postal Service*,

  721 F.3d 1133 (9th Cir. 2013) ......................................................................... 27

*U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co.*,

    576 F.3d 1040 (9th Cir. 2009) ...................................................................... 19

*United States v. Bajakajian*,

    84 F.3d 334 (9th Cir. 1996) ......................................................................... 26

*United States v. Bowen*,

    830 F. App'x 504 (9th Cir. 2020) ................................................................ 19

*United States v. Fujii*,

    301 F.3d 535 (7th Cir. 2002) ....................................................................... 20

*United States v. Pend Oreille Pub. Util. Dist. No. 1*,

    926 F.2d 1502 (9th Cir. 1991) ..................................................................... 21

*Van v. LLR, Inc.*,

    962 F.3d 1160 (9th Cir. 2020) ....................................................................... 2

*Warth v. Seldin*,

    422 U.S. 490 (1975) .................................................................................... 11

*Wood v. City of San Diego*,

    678 F.3d 1075 (9th Cir. 2012) ..................................................................... 27

## **Statutes**

42 U.S.C. § 1395y(b)(3)(A) ................................................................................ 25

## **Other Authorities**

42 C.F.R. § 422.108(f) ....................................................................................... 26

Fed. R. Civ. P. 25(c) .......................................................................................... 12

Fed. R. Evid. 803(6) ................................................................................... 17, 18

## **INTRODUCTION**

In the face of controlling United States Supreme Court authority—*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) and *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021)—Defendant/Appellee Mercury General Corp. ("Mercury") urges this Court to endorse a decision-making process that not only runs counter to the Supreme Court's mandate but also involves inappropriate, unnecessary procedural complexity and undermines the MSP Act's "overarching goal" of "protecting the fisc." *DaVita Inc. v. Virginia Mason Mem'l Hosp.*, 981 F.3d 679, 694 (9th Cir. 2020).

If left uncorrected, the lack of notice and an opportunity to be heard, as well as the disregard of customary procedure, in the district court would discourage private parties from seeking to enforce the MSP Act and encourage primary payers to continue to dodge their duty to make full reimbursement. Reversal of the order on appeal will foster a properly structured judicial process that will both assist the courts and promote the goals and mandates of the MSP Act.

## **ARGUMENT**

## I.    THE UNDISPUTED EVIDENCE ESTABLISHES STANDING

### A.    Mercury's New *Spokeo* Argument is Baseless

Mercury contends that Plaintiffs'/Appellants' injuries resulting from violations of the MSP Act do not establish standing "because a statutory right is

insufficient to confer constitutional standing." AB p. 50 (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339, 341 (2016)).[1] Mercury twists the true holding of *Spokeo*. This Court has explained that "Congress may not create standing by permitting a plaintiff to sue on a '*bare* procedural violation, *divorced* from any concrete harm.'" *Inland Empire Waterkeeper v. Corona Clay Co.*, 17 F.4th 825, 833 (9th Cir. 2021) (quoting *Spokeo*, 136 S. Ct. at 1549) (emphasis added).

In addressing what constitutes concrete harm, the Supreme Court in *TransUnion*, 141 S. Ct. at 2204 (emphasis added), has unequivocally stated that where, as here, "a defendant has caused physical or *monetary injury* to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III." *Accord Van v. LLR, Inc.*, 962 F.3d 1160, 1161 (9th Cir. 2020) ("We agree with other circuits that the inability to have and use money to which a party is entitled is a concrete injury.") (cleaned up).

Plaintiffs have not merely identified a "bare procedural violation." Instead, they alleged and have demonstrated that they suffered actual, monetary harm. In short, Plaintiffs' injuries fall squarely within those found in *TransUnion* to support Article III standing.

---

[1] "AB" refers to Appellee's Brief while "AOB" refers to Appellants' Opening Brief.

2

**B.** **The Trial Court's Procedure in Addressing Standing Failed to Comply with Controlling U.S. Supreme Court and Ninth Circuit Authority**

In defending the district court's procedure, Mercury acknowledges, but refuses to apply, *Lujan*'s mandate regarding the proper procedure for deciding the issue of Article III standing. *Lujan* states that "each element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, *with the manner and degree of evidence required at the successive stages of the litigation*." *Lujan*, 504 U.S. at 561 (emphasis added). Further, at the summary judgment stage, a plaintiff's evidence must "be taken to be true." *Id.* at 561.

There is no question that *Lujan* remains good law and precludes looking backward to the pleading stage when a case has advanced to the later stages of litigation. The Supreme Court in *TransUnion*, 141 S. Ct. at 2208 (quoting *Lujan*, 504 U.S. at 561), recited *Lujan*'s standard, and then held: "Therefore, in a case like this that proceeds to trial, the specific facts set forth by the plaintiff to support standing 'must be supported adequately by the evidence adduced at trial.'"

Mercury makes no attempt to show that the district court's process considered "the manner and degree of evidence" required given "the stage of litigation"—a stage when the court had already denied Mercury's Rule 12(b)(1) motion to dismiss the Second Amended Complaint ("SAC"), the parties had engaged in a "boatload"

of discovery, 2-ER-432, the standing issue arose based on evidentiary submissions at the class certification phase. Indeed, when Mercury recited the applicable standard in its standing brief below, it stated that "at the summary judgment stage, plaintiffs must support those allegations with admissible evidence." 3-ER-417 (citing *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 869, 873 (7th Cir. 2021)).[2]

As support for its new-found view on appeal that the district court properly failed to a summary judgment process and apply a summary judgment standard, Mercury cites two cases: *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004), on which the district court also relied, and *Am. Postal Workers Union of Los Angeles, AFL-CIO v. U.S. Postal Serv.*, 861 F.2d 211, 213 (9th Cir. 1988). Neither decision (1) involved Article III standing, (2) applied *Lujan*, or (3) was rendered at a comparable stage of litigation (after denial of a Rule 12(b)(1) motion and substantial discovery).

Moreover, *Safe Air* actually held that the district court erred in characterizing its dismissal as being under Rule 12(b)(1) "because the jurisdictional issue and substantive issues in this case are so intertwined that the question of jurisdiction is

---

[2] Mercury chastises Plaintiffs for not citing to the records of both cases on appeal even when the documents in the two cases are identical. The cases were effectively consolidated below, and Plaintiffs have moved to consolidate the cases on appeal—a motion that Mercury inexplicably opposes.

dependent on the resolution of factual issues going to the merits." 373 F.3d at 1040. The *Safe Air* court emphasized that while "the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment," *id.* at 1039, a district court should rely only on Rule 12(b)(1) if the facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's cause of action. *Id.* at 1040, 1040 n.3. Consequently, the *Safe Air* Court reviewed the district court's order as a grant of summary judgment and not as a dismissal for lack of subject matter jurisdiction. *Id.* at 1040.

With respect to Article III standing, the requirement that a plaintiff have suffered actual harm frequently is intertwined with the merits of the claim. So it is here. As to both standing and the merits, Plaintiffs must prove that they were properly assigned the right to recover from Mercury, that their assignor made a conditional payment when Mercury was the primary payer, and that Mercury did not reimburse the assignor. Thus, far from supporting the district court's procedure, *Safe Air* confirms that the district court erred in failing to apply a summary judgment standard (as well as in disregarding *Lujan*'s command to take Plaintiffs' evidence as true).

*American Postal Workers* also fails to support the district court's process and decision. In *American Postal Workers*, the Court, after emphasizing that the case did not involve Article III standing, then concluded that the district court's order was

not a summary judgment decision, because "[t]he district court based its decision solely on its interpretation of the collective bargaining agreement, which was attached to the [plaintiff's] complaint." 861 F.2d at 213. The district court here neither limited its ruling to documents attached to the complaint nor considered the issues as if it were addressing a summary judgment motion.

Mercury seems to be arguing that the analysis changes because the district court raised the standing issue *sua sponte*. This Court, sitting en banc, has held otherwise. In *Norse v. City of Santa Cruz*, 629 F.3d 966 (9th Cir. 2010), the defendant for tactical reasons did not move for summary judgment, and the case was set for trial. *Id.* at 970 n.1. Unexpectedly, the district court announced that, instead of holding trial, it would consider whether the individual defendants were entitled to qualified immunity. *Id.* at 970. Following the hearing and without allowing the plaintiff to submit further evidence, the court entered an order dismissing the case after concluding that the individual defendants were entitled to qualified immunity and there was no independent basis to hold the defendant city liable. *Id.* at 971.

In reversing, this Court first concluded that the order was a "summary judgment order" even though not designated as such. *Id.* It then emphasized that while "[d]istrict courts unquestionably possess the power to enter summary judgment sua sponte, even on the eve of trial[,] . . . *the procedural rules governing Rule 56 apply regardless of whether the district court is acting in response to a*

6

*party's motion, **or sua sponte**.*" *Id.* (emphasis added). This Court explained further: "*Sua sponte* grants of summary judgment are only appropriate if the losing party has reasonable notice that the sufficiency of his or her claim will be in issue. Reasonable notice implies adequate time to develop the facts on which the litigant will depend to oppose summary judgment. *A district court that does not comply with the advance notice and response provisions of Rule 56(c) has no power to enter summary judgment.*" *Id.* at 971-72 (cleaned up; emphasis added). A plaintiff must be given a "'full and fair opportunity to ventilate the issues prior to the district court's summary judgment on [its] claims.'" *Id.* at 972-73 (quoting *Greene v. Solano Cnty. Jail*, 513 F.3d 982, 990 (9th Cir. 2008)).

Similarly, in this case, without warning, at a hearing on class certification, the district court announced it had concerns about "whether there is enough evidence here to support standing." 3-ER-463. The court asked for briefing on (1) "whether there's a failure to reimburse under the MSP Act," (2) "do the plaintiffs have the right to sue on behalf of these MAOs[,]" and (3) "whether there is injury-in-fact—examples would be helpful—and whether the injury was caused by the defendant's improper refusal to pay." 3-ER-463-64, 501-02. The court's request expressly intertwined standing and merits issues.

The district court then ordered Plaintiffs to file their brief first and said that "defendant *can respond* and then I will set a hearing, if necessary." 3-ER-502

(emphasis added). The district court subsequently (1) denied Plaintiffs' motion for clarification, (2) refused to require Mercury to produce documents it had agreed to produce relevant to standing, (3) did not set a hearing to address standing (thereby indicating to the parties that the court considered it unnecessary), and (4) announced its intent to proceed with the class certification hearing (ultimately scheduled for July 30, 2021), which suggested that the court had found the standing presentation adequate. 3-ER-456–57; 6-ER-1048. SER-004–019. Then, with no notice to Plaintiffs, the court spent the resumed class certification hearing addressing Mercury's newly raised standing issues. 3-ER-385-407.

Although Mercury criticizes Plaintiffs for not filing a reply brief—even though the district court had not included a reply brief in its briefing order—Central District of California Local Rule 7-10 provides that a reply brief is due "not later than fourteen (14) days before the date designated for the hearing of the motion[.]" Since the court had not scheduled any hearing on standing yet, the local rule deadline had not passed.

This process parallels the improper process in *Norse* that this Court criticized for failing to provide "a full and fair opportunity to ventilate the issues" prior to the district court's summary judgment decision. 629 F.3d at 972-73; *accord Mecinas v. Hobbs*, 30 F.4th 890, 896 (9th Cir. 2022) (holding with respect to Article III standing, that "'where the jurisdictional issue and substantive issues are so

intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial.'") (quoting *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)).[3]

Mercury's curious argument that Plaintiffs, in advocating for a summary judgment procedure, are attempting to improperly shift the burden of proof to Mercury is misplaced. If this were correct, it would apply to the overwhelming majority of summary judgment motions. Instead, under Rule 56, a defendant argues that the plaintiff cannot produce sufficient evidence to meet its burden of proof. It is then up to the plaintiff to produce evidence showing that it can. Mercury cites no authority that this process does not apply to Article III standing.

## C.  Mercury's Brief Fails to Rebut Plaintiffs' Evidence of Standing

In order to conclude that Plaintiffs have standing, this Court needs to find only one instance of concrete injury—a failure to reimburse Plaintiffs under the MSP Act. It can easily do so by looking at the E.H. example in the settlement action and the S.Y. example in the no fault action. Both reimbursement claims belonged to Verimed IPA, LLC, which assigned them to MSP Recovery, LLC ("MSPR"). 7-ER-1130–36. The SAC alleged that Verimed had assigned its rights to MSPR, prior to

---

[3] To the extent *Mecinas* holds that the district court may resolve any factual disputes, it relies solely on *Augustine*, which predates *Lujan*. This Court need not reach or resolve that issue on this appeal.

the filing of the original complaints, but Plaintiffs did not discover the E.H. injury or the S.Y. injury, which predated the assignment, until after the SAC was filed. 5-ER-789–90, 855–56; 7-ER-1375; 8-ER-1439; 9-ER-1693–95.

Although as shown in Plaintiffs' opening brief, other examples of non-reimbursement also establish standing, Mercury does not dispute that the E.H. and S.Y. examples would provide evidence of an injury due to non-reimbursement but for Mercury's contentions that (1) the district court could not consider any examples of injury that were not alleged in the complaint, and (2) the current Plaintiffs do not have a right to sue with respect to Verimed enrollees. Neither argument is supported by the law.

First, Mercury cites no cases validating the district court's position that it could ignore actual evidence of standing not alleged in the complaint. The law is to the contrary, as both *Lujan* and *TransUnion* explain. Although alleging standing is an initial pleading requirement, *Lujan* and *TransUnion* establish that in later stages of litigation, standing becomes a matter of actual evidence.

Here, the district court previously had expressly concluded that the SAC adequately alleged standing. 4-ER-685-708. Mercury does not challenge that conclusion on appeal. As *Lujan* and *TransUnion* make clear, this case had moved on to the next stage of the litigation, which—after partial discovery—required Plaintiffs to produce evidence of standing. Indeed, Mercury's counsel announced in oral

10

argument: "We're way past plausibility. We're at the point where there must be actual evidence of an injury-in-fact." 3-ER-393.

Further, as Plaintiffs pointed out in their opening brief (AOB p. 35), the Supreme Court has repeatedly instructed that, as a matter of procedural fairness, a court may *only* dismiss an action for lack of standing after reviewing *all the evidence*—holdings that Mercury ignores. *See, e.g., Warth v. Seldin,* 422 U.S. 490, 501-02 (1975); *Gill v. Whitford*, 138 S. Ct. 1916, 1933-34 (2018); *Alabama Legislative Black Caucus v. Alabama*, 575 U.S. 254, 270-71 (2015)).

Mercury cites *Warth*'s conclusion that the petitioners in that case had not met the threshold pleading requirement, but disregards *Warth*'s holding that, ultimately, the court must determine whether the plaintiff's standing "adequately appear[s] from all materials of record[.]" 422 U.S. at 502. In this case, given the controlling Supreme Court precedent, the district court erred in failing to consider evidence of standing produced in discovery related to unalleged examples of non-reimbursement.

With respect to E.H. and S.Y., it is undisputed that when the two initial complaints against Mercury were filed in March and April 2017, one of the named plaintiffs, MSPR already had been assigned claims by Verimed. *See* 7-ER-1130–36 (Verimed assignment); 5-ER-939 (original complaint naming MSPR as plaintiff); 5-ER-962 (same). In June 2017, *after* the filing of those complaints, MSPR transferred

11

the Verimed claims to a series entity of MSP Recovery Claims, Series LLC ("MSPRC Series") in June 2017. 7-ER-1137–38.

This transfer, after the filing of the initial complaint, was governed by Fed. R. Civ. P. 25(c), which provides: "If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party."). *See also In re Bernal*, 207 F.3d 595, 598 (9th Cir. 2000) ("[Rule 25(c)] is designed to allow the action to continue unabated when an interest in the lawsuit changes hands.") (cleaned up). As this Court explained in *Bernal*: "There is nothing mysterious about what happened in this case. When litigation was commenced, the [claims] in question were owned by [the filing plaintiff] . . . . Only at a later time were the [claims], and any possible rights under them, transferred to [another entity]." *Id.*

In this case, in the course of denying Mercury's motion to dismiss the SAC, the district court noted (1) that in the SAC, Plaintiffs had replaced "MSP Recovery, LLC" with "MSP Recovery Claims, Series LLC," and (2) that "Plaintiffs state that 'MSP Recovery Claims, Series LLC is now the assignee of most of the Plaintiffs' reimbursement rights under the MSP laws.'" 4-ER-693. As this Court held in *Bernal*, 207 F.3d at 598, "[t]hat was . . . the very paradigm of an assignment controlled by Rule 25(c)," which is not a matter of Article III standing.

12

Because standing existed when these actions were commenced, standing did not cease to exist merely because ownership of the claims was transferred to a different entity during the pendency of the actions. That is precisely the purpose of Rule 25(c). The district court properly concluded both that MSPRC Series was substituted and that Plaintiffs had adequately alleged standing. 4-ER-697. The order on appeal ignored and contradicted these conclusions.

Mercury has not challenged the district court's decision validating the substitution of MSPRC Series. Instead, Mercury's challenge to the E.H. and S.Y. Verimed examples demands that this Court should conclude, contrary to the overwhelming weight of authority, that MSPRC Series lacks authority to sue for claims assigned to its series entities—the same argument it also makes as to D.M., one of the examples of non-reimbursement that is alleged in the complaint.

Mercury dismisses scores of decisions (AOB pp. 47-48) holding that MSPRC Series has the authority, under Delaware law and its operating agreement, to sue on behalf of its underlying series entities on the sole basis that they are not "controlling authority." AB p. 53. It urges the Court to instead follow two out-of-Circuit district court decisions (AB p. 54)—one of which, *MSP Recovery Claims, Series LLC v. USAA Gen. Indemn. Co.*, 2018 WL 5112998 (S.D. Fla. 2018), is no longer good law, and the other, *MSP Recovery Claims, Series LLC v. New York Cent. Mut. Fire Ins.*

13

*Co.*, 2019 WL 4222654 (N.D.N.Y. 2019), relied exclusively on *USAA*. *See* AOB p. 48.

Recognizing the inadequacy of its legal argument, Mercury now attempts to distinguish this case on the grounds that Plaintiffs purportedly "failed" to provide the district court with the operating agreement "prior to dismissal." AB p. 54. However, Mercury first raised its "series entity" argument in its opposition brief on standing. Mercury had not raised this issue in connection with the SAC or during the class certification proceedings. After being sandbagged with this new argument, Plaintiffs' only opportunity to respond was when the district court asked about the operating agreement during the July 30, 2021 hearing that had been noticed as a class certification hearing.

In response to the court's questions about Mercury's new "series entity" theory, Plaintiffs' counsel proffered the operating agreement as evidence by reading the applicable provision of the operating agreement into the record. *See* 3-ER-258 ("And it says, accordingly, the company will maintain the legal right to sue on behalf of each series and be entitled to pursue any and all rights, benefits, and causes of action arising from the assignments to a series."). The district court did not express any concern with counsel's proffer, and Plaintiffs' filing of the operating agreement as an attachment to their motion for reconsideration confirmed the accuracy of counsel's quotation from the operating agreement. *Compare* 3-ER-271. Notably, at

14

the hearing, Mercury's counsel did not respond to Plaintiffs' "operating agreement" argument. 3-ER-259-60.

Mercury presents no other arguments in support of any claim that the E.H. and S.Y. Verimed non-reimbursement examples fail to establish a concrete injury sufficient to support standing. Consequently, this Court can conclude on appeal that Plaintiffs have standing.

### D. Mercury Also Has Failed to Rebut Plaintiffs' Proof of Standing with Respect to the D.M. and J.R. Examples Alleged in the SAC

Because of the Verimed instances of concrete injury, the Court need not address the D.M. and J.R. examples alleged in the SAC. However, Mercury's arguments on appeal as to D.M. and J.R. also confirm that the order on appeal erred in concluding that the D.M. and J.R. examples did not demonstrate Plaintiffs' standing.

With respect to D.M., in addition to the district court's erroneous conclusion that MSPRC Series lacks authority to sue with respect to the D.M. claim because it was assigned to MSPRC Series' entities, the order on appeal also found that even though Trinity accepted all responsibility for paying for its enrollees' medical care, Trinity then turned around and "assigned to Freedom 'recovery, reimbursement or subrogation rights,'" so "Trinity did not have those rights to assign" to Plaintiffs. 1-ER-21. After Plaintiffs, in their opening brief, explained why the district court's reading of the Trinity agreement was inconsistent with both the language of the

agreement and the MSP Act, AOB pp. 54-56, Mercury abandoned any effort to defend the district court's reasoning regarding D.M.

In an attempt to nonetheless eliminate the D.M. example of non-reimbursement, Mercury argues that Plaintiffs did not provide the necessary evidence of Trinity's acceptance of "risk of loss," which would allow it to assert claims as a downstream entity, until Plaintiffs filed the D-1 attachment to the Trinity Group Participation Agreement as an exhibit to the motion for reconsideration. AB pp. 55-56. Mercury's transparent strategy, based on *Henry v. Adventist Health Castle Med. Ctr.*, 970 F.3d 1126, 1128 (9th Cir. 2020), is to preclude this Court from finding a valid assignment from Trinity—even though acknowledging that one existed—by arguing that the district court did not have the necessary evidence until it had dismissed the case.

However, as Plaintiffs explained in their opening brief, the "risk of loss that Trinity agreed to accept is defined in the risk agreement as 'Covered Services[]' . . . ." AOB p. 52. The D-1 Attachment merely sets forth the detailed financial structure of that risk agreement. Accordingly, under Mercury's own argument, the district court had everything it needed, prior to dismissal, to determine that Trinity bore the financial risk of medical services rendered to its Medicare enrollees.

With respect to J.R., while a routine amendment to the complaint would have corrected the name of the plaintiff entity that had received the J.R. non-

16

reimbursement claim (addressed below), Mercury also urged the district court to find that Plaintiffs had baselessly included J.R. as an example of non-reimbursement when no document showed that J.R. was even enrolled in a Medicare Part C plan. In their opening brief, Plaintiffs cited one of Mercury's own documents—as they had in the district court and in a letter to Mercury's counsel—which stated that J.R. was enrolled in Plaintiffs' assignor's plan. 3-ER-359–67, 399, 7-ER-1110, 1396–99. Mercury's response? It ignores Plaintiffs' brief and its own document and regurgitates what it argued below. AB pp. 39-40. If Plaintiffs are properly allowed to amend to correct the name of the Plaintiff that owns the assignment that includes J.R., then Plaintiffs will have shown standing with respect to J.R. as well.

### E. Mercury's After-the-Fact Evidentiary Argument is Improper

Finally, with respect to standing, Mercury challenges the admissibility of Plaintiffs' evidence by incorporating wholesale the district court opinion in *MAO-MSO Recovery II, LLC v. Farmers Ins. Exch.*, 2022 WL 1690151 (C.D. Cal. 2022), which also is on appeal, arguing that it should be applied to Plaintiffs' evidence in this case. Mercury does not, however, even attempt to suggest that it made these same evidentiary arguments below or that the district court ruled on them.

In fact, while Mercury made a cursory objection based on hearsay grounds to the district court, it cited only one decision addressing analogous evidence, and that decision, from the Southern District of Florida, was recently overruled by the

Eleventh Circuit in *MSP Recovery Claims, Series LLC v. Metro. Gen. Ins. Co.*, 40 F.4th 1295, 1303-04, 1305 (11th Cir. 2022) (holding that a spreadsheet attached as an exhibit to a complaint summarizing data comparable to that used in this case (1) should have been considered by the district court on a motion to dismiss, and (2) was sufficient in view of the complaint's allegations to plausibly allege the defendant's demonstrated responsibility to pay).

Because the specific arguments made in *Farmers* were not made below and Mercury's own conclusory, evidentiary argument appeared only in its own standing brief, Plaintiffs had no chance to address those issues in their earlier filed standing brief, including by supplementing their declarations if needed. Further, because the order on appeal did not address any evidentiary arguments, Plaintiffs had no reason to address such issues in their motion for reconsideration. This evidentiary issue is not properly before the Court.

The appeal of the *Farmers* decision will allow this Court to fully consider and decide these evidentiary issues. However, in a nutshell, the flaw in the *Farmers* decision is that it does not grasp the applicability of Rule 803(6), the business record rule, to (1) third-party records incorporated into a party's own business records, and (2) electronic data.

This Court previously has held "that records a business receives from others are admissible under Federal Rule of Evidence 803(6) when those records are kept

in the regular course of that business, relied upon by that business, and where that business has a substantial interest in the accuracy of the records." *MRT Const. Inc. v. Hardrives, Inc.*, 158 F.3d 478, 483 (9th Cir. 1998). The fact that Plaintiffs' business records incorporated assignors' business records does not remove the combined records from coverage by Rule 803(6).

Additionally, the *Farmers* decision reflected a misunderstanding of the nature of electronic data, which falls within the scope of Rule 803(6). The "business records" involved in this and the *Farmers* case are "data" stored in a computer and not, as the *Farmers* district court seemed to assume, electronic versions of documents. 2022 WL 1690151, at *12. Consequently, that data must be exported into a format that can be presented to a court, such as an Excel spreadsheet.

This Court has recognized the unique characteristics of electronic data and has expressly rejected the analysis underlying the *Farmers* decision in *U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co.*, 576 F.3d 1040, 1043-44 (9th Cir. 2009) (holding that insurance company data stored in a computer for business purposes is a business record and summaries of that data printed out to be used as litigation exhibits also constitute business records). *See also United States v. Bowen*, 830 F. App'x 504, 507 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 2687 (2021) (upholding admissibility of spreadsheets summarizing data entered into a computer under Rules 803(6) and 1006 because spreadsheets were summaries of voluminous computer data); *United States*

19

*v. Fujii*, 301 F.3d 535, 539 (7th Cir. 2002) ("Computer data compiled and presented in computer printouts prepared specifically for trial is admissible under Rule 803(6), even though the printouts themselves are not kept in the ordinary course of business.").

Because (1) *Farmers* cannot be reconciled with controlling authority of this Court and other persuasive authority, (2) Mercury did not make these specific arguments below, (3) Plaintiffs did not have an opportunity to address these issues below, and (4) the district court did not consider the issue in the first instance, this Court should not address this issue on appeal.

## II. MERCURY'S FAILURE TO DEMONSTRATE PREJUDICE FROM ALLOWING LEAVE TO AMEND REQUIRES REVERSAL

### A. Mercury Urges Application of the Wrong Standard

As Mercury acknowledges, the district court relied only on undue delay and prejudice as grounds for denying Plaintiffs leave to file a third amended complaint. AB p. 63. However, even Mercury cannot conjure up any credible prejudice. It recites, but does not defend, the district court's reasoning regarding prejudice—reasoning that Plaintiffs showed in their opening brief was illogical. AOB pp. 60–61. Then, rather than identifying any actual prejudice, Mercury instead simply conflates the two factors the district court found, asserting only that the purported undue delay prejudiced it without further explanation. AB p. 17.

20

The law in this Circuit has long been that "[d]elay alone does not provide sufficient grounds for denying leave to amend. The crucial factor is not length of delay, but prejudice. Where there is a lack of prejudice to the opposing party and the amended complaint is obviously not frivolous, or made as a dilatory maneuver in bad faith, it is an abuse of discretion to deny leave to amend." *United States v. Pend Oreille Pub. Util. Dist. No. 1*, 926 F.2d 1502, 1511-12 (9th Cir. 1991).

Although Mercury argues that the district court had "broad discretion" in denying leave to amend because the court had previously allowed amendment, AB p. 61 (citing *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002)), that discretion arises only when prior attempts to amend were unsuccessful. Mercury disregards the fact that the district court denied its motion to dismiss the SAC, the last amended complaint, and Mercury has neither cross-appealed that order nor argued that its ruling on standing was in error.

## B. Mercury Misrepresents the Record in Arguing Undue Delay

In arguing undue delay, Mercury asserts that "MSP Recovery waited to seek leave to allege new claims until after the actions were dismissed." AB p. 62. Mercury acknowledges in passing that Plaintiffs asked the district court in December 2020 to set a deadline for seeking leave to amend the SAC to add additional information uncovered in discovery. Mercury omits, however, the undisputed fact that the district court instructed Plaintiffs to wait until the class certification hearing to discuss leave

21

to amend, stating that it wanted to "get through [the class certification] stage first and see where we stand" before deciding whether to allow Plaintiffs to amend the SAC. 4-ER-642-43.

When the district court raised the issues of standing and deferred resolution of the motion for class certification, Plaintiffs specifically asked the district court in their standing brief for leave to amend the SAC. 3-ER-451–52. Although Mercury now trivializes this request, it took this request very seriously in its district court standing brief, noting Plaintiffs' desire to amend three times and stating twice that it opposed any further amendment. 3-ER-420 n.4, 427-28.

Mercury's suggestion that Plaintiffs' request for leave to amend was inadequate in the absence of a formal motion to amend is disingenuous given Mercury's knowledge that the district court had expressly directed Plaintiffs not to file a motion to amend until the court was addressing class certification. Plaintiffs sought leave in a manner consistent with the district court's direction before the district court had dismissed the cases, and Mercury had an opportunity to oppose that request. The district court did not, however, address that request in its dismissal order. 1-ER-15–25.

Mercury correctly does not suggest that Plaintiffs could have sought leave to amend regarding the new examples of non-reimbursement revealed in discovery until December 2020. Mercury does, however, argue that Plaintiffs unduly delayed

in seeking leave to add "Series PMPI" to one of the plaintiff's names for purposes of the J.R. non-reimbursement example. Other courts have characterized a comparable amendment as a "ministerial or technical defect." *See Anaheim Gardens v. United States*, 118 Fed. Cl. 669, 676 (2014).

Further, Mercury itself has known about the "Series PMPI" issue since 2017 when Plaintiffs produced their assignments, including the PMPI assignment. *See* 4-ER-696. Tellingly, despite knowing of this technical defect since 2017, Mercury did not seek to dismiss for lack of standing and continued litigating these actions. Mercury can hardly argue that they were not focusing on assignments and standing, and yet they offer no explanation regarding why they did not raise the "Series PMPI" issue before or how they would be prejudiced by an amendment now.

### C. Mercury's New "Futility" Argument Does Not Support Affirmance of the District Court's Denial of Leave to Amend

Although the district court did not find that Plaintiffs' proposed amendments would be futile, Mercury appears to be making a futility argument on appeal. It argues that "a plaintiff cannot satisfy the requirements of standing by amending or supplementing its complaint to add events that occurred after it filed the action." AB p. 64. It dismisses Plaintiffs' reliance on *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036 (9th Cir. 2015), arguing that *Northstar* merely "held that a district court did *not* abuse its discretion in *permitting* a supplemental pleading." AB

p. 65. Even a cursory review of *Northstar* reviews that Mercury has a myopic view of the decision.

This Court in *Northstar* expressly stated: "[W]e do not see any consideration of policy that would justify a rule . . . that a party such as [plaintiffs] must file a new complaint instead of a supplemental pleading because of a post-complaint assignment from a party that had standing." *Id.* at 1047. The *Northstar* Court cited its prior decision in *California Credit Union League v. City of Anaheim*, which held that plaintiffs "'should not be compelled to jump through these judicial hoops merely for the sake of hypertechnical jurisdictional purity,' because judicial economy and considerations of practicalities outweigh any concern . . . regarding jurisdictional purity.'" 190 F.3d 997, 1001 (9th Cir. 1999) (quoting *Newman Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 837 (1989)).

Here, if the decision below were to be affirmed, Plaintiffs would have the right to file a new action, using the proposed amended and supplemental complaint as the initial complaint in that action, starting the litigation anew, which would mean that Mercury would have obtained a small victory on a technicality at a great cost to judicial economy.

### D. Mercury Has Made No Effort to Demonstrate Prejudice

Finally, this Court has long held that "[t] party opposing amendment bears the burden of showing prejudice." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187

24

(9th Cir. 1987). There is little need to reply on this issue since Mercury has made no attempt to show prejudice apart from quoting the district court decision, which—as Plaintiffs' opening brief showed (AOB pp. 60–61)—reflected a misunderstanding of the ramifications of its decision. Although Mercury spends four pages of its brief on vilification of Plaintiffs and personal attacks on Plaintiffs' counsel—and one wonders how much time reviewing SEC filings and press reports to include immaterial outside-the-record citations—Mercury could not even dedicate a single paragraph to explain how it would actually be prejudiced if the district court had granted leave to amend rather than dismissing the actions without prejudice.

## III. MERCURY'S FAILURE TO CROSS-APPEAL NEGATES ITS DEMAND TO REVERSE THE DISTRICT COURT'S RULING THAT MSP'S ASSIGNORS CAN ASSERT A PRIVATE CAUSE OF ACTION UNDER THE MSP ACT

### A. No Jurisdiction Exists over Mercury's Argument

Mercury concludes its Answer Brief by improperly arguing that even if Plaintiffs have standing, the Court should affirm the order on appeal on the alternative ground that "the MSP Act's private cause of action is not available to [Plaintiffs'] assignors as a matter of law." AB p. 67. The district court, however, denied Mercury's motion to dismiss Plaintiffs' SAC on that basis, concluding that MAOs, such as Plaintiffs' assignors, may bring suit under the MSP Act's private cause of action, 42 U.S.C. § 1395y(b)(3)(A). 4-ER-705-06.

The district court based its decision on CMS regulations (42 C.F.R. § 422.108(f)) and what it called the "persuasive reasoning" of the Third Circuit (*In re Avandia Mktg., Sales Practices, & Prods. Liab. Litig.*, 685 F.3d 353, 367 (3d Cir. 2012)) and the Eleventh Circuit (*Humana Med. Plan, Inc. v. Western Heritage Ins. Co.*, 832 F.3d 1229, 1236-37 (11th Cir. 2016)). *See* 4-ER-706. Mercury has not cross-appealed from that decision.

Despite the failure to cross-appeal, Mercury claims that the Court can still address the issue because the Court may "affirm the district court on any basis supported by the record." AB p. 67. Long-standing precedent forecloses Mercury's strategy. In *Jennings v. Stephens*, 574 U.S. 271, 276 (2015), the Supreme Court, citing authority dating back to 1924, held: "[a]n appellee who does not cross-appeal may not 'attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary.'" *Accord United States v. Bajakajian*, 84 F.3d 334, 338 (9th Cir. 1996), *aff'd*, 524 U.S. 321 (1998).

Here, a decision in Mercury's favor on whether MAOs can bring a private cause of action under the MSP Act would alter the district court's order. The current order is a dismissal without prejudice. If this Court were now to hold that an MAO may not sue under the MSP Act private right of action, that would require a dismissal with prejudice. Under the current order, Plaintiffs could refile a new action after addressing the court's concerns. A dismissal with prejudice, however, would bar any

further litigation, providing an advantage to Mercury while simultaneously harming Plaintiffs. Under these circumstances, this Court lacks jurisdiction in the absence of a cross-appeal. *See Nw. Airlines, Inc. v. Cnty. of Kent, Mich.*, 510 U.S. 355, 364 (1994) (declining to review, in the absence of a cross-petition for certiorari, argument that appellate court erred in concluding that statute conferred a private right of action).

Mercury's reliance on *Wood v. City of San Diego,* 678 F.3d 1075 (9th Cir. 2012) and *Tritz v. U.S. Postal Service,* 721 F.3d 1133 (9th Cir. 2013) is misplaced in this context. Neither decision involved affirming on an alternative ground that enlarged the appellee's rights or lessened the appellant's rights. *Wood*, 678 F.3d at 1086; *Tritz*, 721 F.3d at 1140.

In short, because Mercury failed to file a cross-appeal from the district court's denial of its motion to dismiss the SAC on the grounds that Plaintiffs have no right to sue under the MSP Act private cause of action, this Court has no jurisdiction to review that decision.

## B. Courts Agree that MAOs Have a Right to Sue Under the MSP Act's Private Cause of Action

Even if the Court were to consider Mercury's improper attempt to reverse the district court's denial of its motion to dismiss, Mercury can cite no persuasive authority to support its position. As the district court recognized, courts have been unanimous in holding that MAOs have a right to sue under the MSP Act's private

cause of action and extensive precedent has now been built on those holdings. *See Western Heritage Ins. Co.,* 832 F.3d at 1236-37; *In re Avandia,* 685 F.3d at 367; *see also, e.g., MSPA Claims 1, LLC v. Tower Hill Prime Ins. Co.*, 2022 WL 3223801, at *3 (11th Cir. Aug. 10, 2022); *Metro. Gen.*, 40 F.4th at 1295; *State Farm Mut. Auto. Ins. Co.*, 994 F.3d at 872; *MSP Recovery Claims, Series LLC v. ACE Am. Ins. Co.*, 974 F.3d 1305, 1313 (11th Cir. 2020); *Tenet Fla., Inc.*, 918 F.3d at 1317; *MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F.3d 1351, 1358 n.4 (11th Cir. 2016); *Farmers*, 2022 WL 1690151, at *10; *Humana Ins. Co. v. Bi-Lo, LLC*, 2019 WL 4643582, at *3 (D.S.C. Sept. 24, 2019).

In fact, no court has held that MAOs are precluded from suing under the private cause of action created by the MSP Act—a reality driven home by the fact that Mercury's *sole* "authority" is the dissent in *Western Heritage Ins. Co.*, and a dissent from the Eleventh Circuit's subsequent denial of rehearing *en banc*. AB p. 69 (citing *Western Heritage Ins. Co.,* 832 F. 3d at 1240-43 (Pryor, J., dissenting); *Western Heritage Ins. Co.,* 880 F. 3d 1284, 1285 (Mem.) (11th Cir. 2018) (Tjoflat, J., dissenting)). Judge Tjoflat has, however, since joined an opinion deciding the applicable statute of limitation for an MAO's claim under that cause of action (42 U.S.C. § 1395y(b)(3)(A)). *See Tower Hill Prime Ins. Co.*, 2022 WL 3223801, at *6.

While Mercury also cites *Parra v. PacifiCare of Arizona, Inc.,* 715 F.3d 1146, 1153-54 (9th Cir. 2013), this Court specifically noted that it was not deciding

whether *Avandia* correctly concluded that an MAO may sue under the MSP Act private right of action. *Id.* at 1154.

Given the jurisdictional issue and the lack of authority for Mercury's position, this Court should decline to address whether MAOs may sue under the MSP Act private right of action. If this Court concludes otherwise, it should join the Third and Eleventh Circuits and allow such claims.[4]

## **CONCLUSION**

For all the reasons above and in Appellants' Opening Brief, the Court should reverse.

Dated:  September 6, 2022                    Respectfully submitted,

                                                         /s/ Andrés Rivero
                                                         Andrés Rivero, Esq., FBN 613819
                                                         Alan H. Rolnick, Esq., FBN 715085
                                                         arivero@riveromestre.com
                                                         arolnick@riveromestre.com

---

[4] The Court also should not accept Mercury's invitation to define the elements of an MSP Act private cause of action, an issue not before the Court. In its Statement of the Case, Mercury proclaims that Plaintiffs must allege and prove that insurers did not refuse to pay for reasons allowed by their contract (AB p. 22)—reasons that are normally affirmative defenses, as this Court implicitly recognized in *DaVita*, 981 F.3d at 692 (stating that "no MSP claim would be available if the insurer declines to pay because of a good-faith assertion" of various specified contract defenses); *see also U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co.*, 348 F. App'x 208, 210 (9th Cir. 2009) (holding exhaustion of policy limits is affirmative defense). As the Eleventh Circuit has noted, these are issues best decided in the first instance at the district court level. *Allstate Ins.* Co., 835 F.3d at 1362.

**RIVERO MESTRE LLP**
2525 Ponce de Leon Blvd. Suite 1000
Miami, FL 33134
Tel: (305) 445-2500 / Fax: (305) 445-2505

Martha A. Geer
Mark Silvey
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
900 West Morgan Street
Raleigh, North Carolina 27603
(919) 600-5000

*Counsel for Appellants*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 21-56395

I am the attorney or self-represented party.

**This brief contains** | 6,996 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*

    ○ it is a joint brief submitted by separately represented parties;

    ○ a party or parties are filing a single brief in response to multiple briefs; or

    ○ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [          ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Andres Rivero     **Date** | Sept. 6, 2022

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**      *Rev. 12/01/2018*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 15. Certificate of Service for Electronic Filing

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)**  | 21-56395

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)*:

Appellants' Reply Brief

**Signature** | /s/ Andres Rivero    **Date** | Sept. 6, 2022

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 15**                                                          *Rev. 12/01/2018*