JORDAN S. ALTURA
JALTURA@GRSM.COM
DIRECT DIAL: (415) 875-4219



ATTORNEYS AT LAW
275 BATTERY STREET, SUITE 2000
SAN FRANCISCO, CA 94111
WWW.GRSM.COM

December 21, 2022

**FILED AND SERVED VIA CM/ECF**

Molly Dwyer
Clerk of the Court
U.S. Court of Appeals for the Ninth Circuit
James R. Browning Courthouse
95 Seventh Street
San Francisco, CA 94103-1526

> Re:  Appellee Mercury General's Second Rule 28(j) Citation to Supplemental
> Authority
> *MAO-MSO Recovery II, LLC, et al. v. Mercury General*, Case No. 21-56395

Dear Ms. Dwyer:

Appellee Mercury General submits the following supplemental authority under Rule 28(j).

In *MSP Recovery Claims, Series LLC v. Tower Hill Prime Ins. Co.*, No. 1:20-CV-262-AW-HTC, Dkt. 144 (N.D. Fla. Dec. 20, 2022) ("*Tower Hill*"), attached as **Exhibit A**, the district court granted summary judgment for the defendants, dismissing all claims against Tower Hill Prime for lack of Article III standing because MSP Recovery offered no evidence that it was actually assigned the claims at issue.  MSP Recovery pursued claims related to two exemplar beneficiaries, L.D. and S.B., yet it failed to offer evidence genuinely disputing that either exemplar was carved out from the relevant assignment.  *Tower Hill*, p. 4, 12, 14.  As to L.D., MSP Recovery's own evidence indicated that the assignor lacked the legal right to pursue recovery because it had already conveyed its interest in the claim to a third party prior to the MSP Recovery assignment.  *Id.* at 8, 12.  As to S.B., MSP Recovery asserted that the assignment encompassed all of the assignor's claims, yet the only record citation offered was a conclusory declaration made by the assignor's corporate representative, which lacked probative value and failed to create a genuine dispute about whether the claim was carved out from the assignment. *Id.* at 12-13.  The declarant's assertion that he reviewed the assignor's claims data sent to MSP Recovery was insufficient to show personal knowledge about the alleged assignment of the S.B. claim.  *Id.* at 13.

The court in *Tower Hill* concluded: "At bottom, the problem is that MSP Recovery bought bundles of MSP Act claims without really knowing what claims it was buying.  At this stage, it still cannot show that it holds valid assignments for the L.D. and S.B. claims. That

Molly C. Dwyer
Clerk of the Court
December 21, 2022
Page 2

means it cannot proceed past summary judgment." *Id.* at 14. *Tower Hill* provides further support for Mercury's arguments that Appellants failed to meet their burden of establishing Article III standing because their own evidence indicates they do not own the recovery rights for the exemplar beneficiaries. *See* Appellee's Br., 55-56.

Sincerely,

GORDON REES SCULLY MANSUKHANI, LLP

Jordan S. Altura

cc:     All Counsel of Record

1135876/72633780v.1

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

MSP RECOVERY CLAIMS, SERIES
LLC, and MSP RECOVERY CLAIMS,
SERIES 44 LLC,

      **Plaintiffs,**

v.                               **Case No. 1:20-cv-262-AW-HTC**

TOWER HILL PRIME INSURANCE
COMPANY, et al.,

      **Defendants.**

_____/

## ORDER GRANTING SUMMARY JUDGMENT
## AND DENYING AS MOOT OTHER OUTSTANDING MOTIONS

      MSP Recovery Claims, Series LLC; and MSP Recovery Claims, Series 44 LLC, (collectively "MSP Recovery") sued Defendants Tower Hill Prime and Tower Hill Select under the Medicare Secondary Payer Act ("MSP Act"). Five motions are pending: MSP Recovery's class-certification motion (ECF No. 62), MSP Recovery's summary-judgment motion (ECF No. 97), Defendants' summary-judgment motion (ECF No. 95), and Defendants' motions to strike (ECF Nos. 93, 115).

      This order addresses all pending motions, beginning with Defendants' summary-judgment motion. I have considered that motion, ECF No. 95 ("MSJ"), the response, ECF No. 111 ("Resp."), and arguments from the hearing.

## I.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" when it might impact the outcome of the suit. *Id.*

At the summary-judgment stage, a court's role is not to weigh the evidence, but to determine whether there are genuine issues for trial. *Id.* at 249. In making that determination, the court must view the evidence in a light most favorable to the nonmoving party. *See Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).[1]

## II.

## A.

Medicare "entitl[es] recipients to have Centers for Medicare & Medicaid Services ('CMS') pay providers directly for their medical care." *MSP Recovery Claims, Series LLC v. Metro. Gen. Ins. Co.*, 40 F.4th 1295, 1298 (11th Cir. 2022) (citations omitted). But the "MSP Act allocates liability between Medicare and other

---

[1] Parties must cite "particular parts of materials in the record" to support their factual assertions. Fed. R. Civ. P. 56(c)(1)(A). The court "need consider only the cited materials," and I have declined to consider record materials other than those cited in the parties' briefs or in this order. *See id.* 56(c)(3); *accord* N.D. Fla. Loc. R 56.1(F).

insurers," *id.* (citing *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1233 (11th Cir. 2016)), and Medicare is supposed to be the payer of last resort, *Humana*, 832 F.3d at 1234.

When a primary payer "has not made or cannot reasonably be expected to make payment," the MSP Act authorizes Medicare to make a conditional payment. 42 U.S.C. § 1395y(b)(2)(B)(i). The primary payer must then reimburse Medicare. *Id.* § 1395y(b)(2)(B)(ii). If it does not, the MSP Act allows the government to sue for recovery. *Id.* § 1395y(b)(2)(B)(iii).

In 1997, Congress enacted Medicare Part C, allowing for MAOs. *Humana*, 832 F.3d at 1235. MAOs are private insurers that provide Medicare benefits. *Id.* Like Medicare, they are considered secondary payers and can sue primary payers to recover conditional payments. *Id.* at 1236-39; *see also* 42 U.S.C. § 1395y(b)(3)(A).

## B.

Defendants are primary payers, and this case is about their alleged failure to reimburse MAOs' conditional payments. The reimbursement claims at issue involve four Medicare beneficiaries: L.D., S.B., J.M., and J.C. MSP Recovery originally alleged Tower Hill Select is liable for J.M. and J.C.'s expenses, with Tower Hill Prime responsible for the L.D. and S.B. claims. *See* ECF No. 34 at 28-35. But as

MSP Recovery clarified at the hearing, it now only pursues claims related to L.D. and S.B.[2] So only MSP Recovery's claims against Tower Hill Prime remain.

The following facts are undisputed. *See* Resp. at 4, ¶¶ 1-2, 4 (not disputing ¶¶ 1-7, 9-26, and 29-31 of Defendants' statement of facts). MSP Recovery is not a MAO. MSJ at 3, ¶ 1. Instead, as outlined below, it attempts to stand in the shoes of MAOs that paid L.D.'s and S.B.'s medical expenses.

### i. L.D.

L.D. was enrolled with MAO Blue Cross Blue Shield of Rhode Island ("BCBSRI"). MSJ at 6-7, ¶ 16. L.D. suffered a January 2017 injury on property Tower Hill Prime insured. *Id.* L.D.'s attorney and Tower Hill Prime began settlement negotiations, during which L.D.'s attorney sent Tower Hill Prime a statement from Equian (a third-party recovery company). *Id.* at 7, ¶¶ 17-18 (citing ECF No. 94-10). L.D.'s total medical bill was noted as $4,697.00. ECF No. 94-10 at 3. But according to the letter and the Equian statement, BCBSRI only paid $1,020.72. *Id.* at 3, 5. The Equian statement requested that amount as a "[b]alance [d]ue" and directed that payment should be made to Equian. *Id.* at 4-5. An Equian report shows that it closed

---

[2] Defendants sought summary judgment on the basis that the J.M. and J.C. claims are time-barred under 28 U.S.C. § 1658(a). *See* MSJ at 2. Although MSP Recovery originally disagreed, it withdrew the J.M. and J.C. claims during the hearing, conceding they are time-barred under intervening Eleventh Circuit authority. *See MSPA Claims 1, LLC v. Tower Hill Prime Ins. Co.*, 43 F.4th 1259, 1265-67 (11th Cir. 2022). I will grant summary judgment on these claims, and no claims remain against Tower Hill Select in the case.

the claim in June 2018 after receiving payment. MSJ at 7, ¶ 18 (citing ECF No. 94-11).[3]

In 2019, BCBSRI and MSP Recovery executed a Statement of Work and Claims Recovery Agreement & Assignment ("SOW"). *See* Resp. at 18 (citing ECF No. 97-27). This agreement assigned "all right, title, interest in and ownership" BCBSRI had in "Claims" so that MSP Recovery could "identify and pursue" them. ECF No. 97-27 § D; *see also* § 1.2.1. It defined "Claims" as BCBSRI's "rights to seek reimbursement . . . from primary payers" that it either had at the time or would have in the future. *Id.* § B.

*ii. S.B.*

S.B. was an enrollee of MAO AvMed. MSJ at 8, ¶ 19. In May 2016, S.B. was injured on another property that Tower Hill Prime insured. *Id.* Tower Hill Prime settled with S.B. *Id.* ¶ 20.

MSP Recovery and AvMed executed an agreement in November 2017. *Id.* at 9, ¶ 24 (citing ECF No. 94-5). Under that agreement, MSP Recovery would offer to purchase from AvMed the right to identify and pursue AvMed's claims on its behalf. *See* ECF No. 94-5. The agreement recognized that AvMed had "previously engaged another firm to obtain subrogation recoveries." *Id.* § 1(b). "To the extent those

---

[3] Defendants' summary-judgment motion reports the close date as June 19, 2017, but the cited evidence lists it as June 19, 2018.

existing subrogation recovery efforts w[ould] be excluded from the Claims, Client [was to] provide MSP Recovery sufficient information to make the Offer." *Id.*; *see also* MSJ at 9, ¶ 24 (citing ECF No. 94-6 ¶ 2.2.1 ("Upon receipt of Assignor's claims data, MSP Recovery . . . will conduct a review and analysis of the data in order to identify the Assigned Claims.")).

Jorge Lopez, MSP Recovery's general counsel, testified in a deposition that he could not remember MSP Recovery's asking AvMed for any information reflecting its agreements with other firms. MSJ at 9, ¶ 24 (citing ECF No. 94-4 at 21 (69:8-21) (stating also that he believed "the discussions between AvMed and MSP Recovery established that AvMed handled its own subrogation and that there were no agreements with outside vendors")).

## III.

Tower Hill Prime contends MSP Recovery has offered no evidence it was actually assigned the L.D. and S.B. claims, meaning it lacks Article III standing to pursue them.

To have standing, a plaintiff generally "must show that it (1) suffered an injury-in-fact (2) that is fairly traceable to the defendant's conduct and (3) is redressable by a favorable judicial decision." *MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312, 1317 (11th Cir. 2019) (citing *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018)). For MSP Act claims, "the primary plan's failure to make primary

payment or to reimburse the MAO causes the MAO an injury in fact." *Humana*, 832 F.3d at 1238.

MSP Recovery is not a MAO, but an "assignee of a claim has standing to assert the injury in fact suffered by [an] assignor." *Tenet Fla.*, 918 F.3d at 1317-18 (quoting *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 286 (2008)). It follows that MSP Recovery must show it was "validly assigned the right to sue to vindicate [an MAO's] injury." *Id.* at 1318 (citations omitted). I address MSP Recovery's standing to pursue the L.D. and S.B. claims in turn.

### A.

As to L.D., and for the reasons explained below, I agree with Tower Hill Prime that MSP Recovery points to no evidence that it was assigned the claim.

First, MSP Recovery argues the SOW unambiguously granted it the right to pursue any hypothetical BCBSRI claim without limit. *See* Resp. at 18. But the SOW indicates BCBSRI only intended to assign the rights to pursue claims that it actually owned or had an interest in at the time. ECF No. 97-27 § D; *see also* § 1.2.1. And BCBSRI of course could not assign claims that did not exist or that it already assigned to someone else.

That leaves the question of whether MSP Recovery offers any evidence BCBSRI could have assigned (and actually did assign) MSP Recovery the right to pursue a conditional payment of L.D.'s expenses. Again, it is undisputed that Equian

pursued reimbursement of L.D.'s expenses for BCBSRI—a pursuit Equian listed as closed after recovering at least some payment. MSJ at 7, ¶ 18 (citing ECF No. 94-11); Resp. at 4, ¶ 1.

As evidence MSP Recovery was never assigned the L.D. claim, Tower Hill Prime points to a list MSP Recovery produced when responding to a discovery request for the "carve-out lists."[4] ECF No. 94-12 ¶ 16. MSP Recovery listed eleven BCBSRI files in response. *Id.* Tower Hill Prime further points out how MSP Recovery's chief information officer, Christopher Miranda, admitted that the L.D. claim was part of a carve-out to Equian.[5] ECF No. 84-1 at 171 (169:12-14). These

---

[4] This request asked for all carve-out lists mentioned in MSP Recovery's own complaint. *See* ECF No. 34 ¶ 42 ("In all instances where an assignment contains a carve-out provision, the assignor has furnished Plaintiffs with one or more itemized lists identifying the specific claims retained by that assignor. Those lists are referred to as 'carve-out lists.'").

[5] MSP Recovery contends it did not designate Miranda to testify about assignments. *See* Resp. at 18. Even accepting that Miranda's answer exceeded the scope of the Rule 30(b)(6) designation, that would not require disregarding his admission entirely. *See King v. Pratt & Whitney*, 161 F.R.D. 475, 476 (S.D. Fla. 1995) ("Rule 30(b)(6) does not limit what can be asked at a deposition. . . . [T]he Rule simply defines a corporation's obligations regarding whom they are obligated to produce for such a deposition and what that witness is obligated to be able to answer."), *aff'd sub nom.*, 213 F.3d 646 (11th Cir. 2000); *Mitnor Corp. v. Club Condos.*, 339 F.R.D. 312, 320-21 (N.D. Fla. 2021); *see also McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, 241 F. Supp. 3d 737, 752 (N.D. Tex. 2017) (reasoning that answers outside the scope of a Rule 30(b)(6) notice "are merely treated as the answers of the individual deponent" rather than binding on the corporation (quoting *Falchenberg v. N.Y. State Dep't of Educ.*, 642 F. Supp. 2d 156, 164 (S.D.N.Y. 2008))).

admissions—combined with evidence suggesting Equian pursued BCBSRI's conditional payment of L.D.'s expenses—suggest that Equian had the legal right to pursue that payment. So this evidence also suggests that, before executing its assignment to MSP Recovery, (1) BCBSRI had already conveyed its interest in the L.D. claim to Equian and (2) a claim no longer existed because Equian successfully pursued it.

Although MSP Recovery purports to dispute that the L.D. claim was carved out and vindicated, *see* Resp. at 4, ¶ 5, it points to no evidence *genuinely* disputing that. It cites a declaration from BCBSRI's Sheila Haley, *see id.* at 4, ¶ 6 (citing ECF No. 111-3), but Haley's declaration makes no mention of any assignment. Instead, Haley merely certifies that unspecified claims records BCBSRI transmitted to MSP Recovery were "true and complete reproductions of its original records." ECF No. 111-3. It does not speak to the process by which BCBSRI determined what data to send to MSP Recovery, nor does it speak to whether BCBSRI first determined the data related to claims not carved out of the MSP Recovery assignment. *Cf. MSP Recovery Claims, Series LLC v. Aix Specialty Ins. Co.*, 2020 WL 5524854, at *10-11 (M.D. Fla. Aug. 10, 2020). And thus it does not come close to showing that BCBSRI assigned MSP Recovery the L.D. claim.

MSP Recovery characterizes the list of carved-out BCBSRI files as just a "subrogation list." Resp. at 19. And if the L.D. claim appears on that list (MSP

Recovery points to no evidence suggesting otherwise), "the conditional payments for which Plaintiffs seek reimbursement have not been repaid." *Id.* at 19-20. So, then, BCBSRI would have assigned it the right to pursue those payments Equian did not recover. *See id.*

The problem for MSP Recovery's partial-reimbursement argument is that it points to no evidence of unreimbursed BCBSRI conditional payments besides the $1,020.72 Equian sought. *See* ECF No. 94-10 at 3-5; *cf. MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 869, 874-75 (7th Cir. 2021) (reasoning on summary judgment that the MAO's underlying "injury has to be the existence of an unreimbursed payment—a concrete right to collect from [the primary payer]—not the mere existence of an assignment to collect *potentially* unreimbursed payments"). MSP Recovery only cites declarations by Miranda and Dr. Manuel Brito. *See* Resp. at 19 (citing ECF No. 62-2 ¶ 58; ECF No. 97-1 ex. A, ¶¶ 22-23). Miranda states "BCBSRI paid $199.20" for L.D.'s expenses but was charged $4,900.28. ECF No. 62-2 ¶ 58. And Dr. Brito states that BCBSRI was billed "$4,900.28 for L.D.'s incident-related medical expenses, of which BCBSRI paid." ECF No. 97-1 ex. A, ¶ 23. But simply put, the fact that BCBSRI was *billed* $4,900.28 for L.D.'s expenses does not mean BCBSRI paid $4,900.28. The undisputed evidence shows that BCBSRI at least originally paid only a fraction of L.D.'s total expenses. *See* ECF No. 94-10 at 3-5.

10

Miranda does say that BCBSRI paid $199.20 of L.D.'s expenses. Yet evidence of a $199.20 payment is not evidence that $199.20 payment wasn't previously reimbursed—recovered by Equian or otherwise.[6] And MSP Recovery points to no evidence that this $199.20 is separate from what Equian sought. Dr. Brito makes no assertion at all about BCBSRI's conditional-payment amount (let alone any associated recoveries). So neither of the cited statements even remotely suggest that BCBSRI made conditional payments beyond what Equian pursued or recovered.

Even assuming for argument's sake that the declarations evince additional unreimbursed conditional payments, the statements do not refute that the right to pursue their reimbursement was conveyed to Equian before the MSP Recovery assignment—as is reasonably shown by the carve-out (or "subrogation") list and Miranda's deposition admission. Given MSP Recovery's failure to point to any relevant evidence supporting its partial-reimbursement theory, that theory fails.

---

[6] MSP Recovery says in a footnote that there is no evidence Tower Hill, rather than some other entity, reimbursed Equian. *See* Resp. at 19 n.3. But the onus at this stage is on MSP Recovery to cite evidence supporting that. It does not. MSP Recovery does cite Tower Hill's admission that Tower Hill did not reimburse *BCBSRI* or *MSP Recovery* for L.D.-related expenses. *See* ECF No. 97-7 at 4. Yet Tower Hill did not admit to never paying *Equian*, which—again—considered the matter closed.

In short, BCBSRI could only assign MSP Recovery existing claims it had the legal right to. Tower Hill Prime points to evidence that BCBSRI conveyed the right to pursue its payment of L.D. expenses to a third party before the MSP Recovery assignment. MSP Recovery points to no evidence genuinely disputing that, and thus it has not shown standing to pursue the L.D. claim.

### B.

Similarly, Tower Hill Prime argues that AvMed's agreement with MSP Recovery indicated that not all hypothetical claims would be assigned. *See* ECF No. 94-5 § 1(b) (noting AvMed had "previously engaged another firm to obtain subrogation recoveries."). And Tower Hill Prime contends that because Lopez admitted that MSP Recovery never requested documents specifying the MSP Act claims available for purchase, MSP Recovery cannot show it was ultimately assigned the S.B. claim.

MSP Recovery says AvMed assigned it all its claims. Yet the only record citation it offers is the declaration of Steven Ziegler, AvMed's Senior Vice President and Chief Legal Officer.[7] *See* Resp. at 17 (citing ECF No. 111-1). Ziegler stated that AvMed sent copies of its data files, including S.B. claims data, to MSP Recovery,

---

[7] MSP Recovery also purportedly relies on "testimony from . . . Plaintiffs' corporate representatives." Resp. at 17. But MSP Recovery does not cite any specific testimony (or even name the representatives), and the court declines to go search for it. *See* Fed. R. Civ. P. 56(c)(3); N.D. Fla. Loc. R. 56.1(F).

ECF No. 111-1 ¶¶ 3-4, and that he "*can confirm* that the unreimbursed secondary payments" for the S.B. claim were "not 'carved out,'" *Id.* ¶ 8 (emphasis added).

While MSP Recovery argues I must take Ziegler's assertion as true, the Eleventh Circuit "has consistently held that conclusory allegations without specific supporting facts have no probative value" on summary judgment. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) (citations omitted). Ziegler's "can confirm" assertion does not declare what he knows about the S.B. claim's assignment and how he knows it. *Cf. Broadway v. City of Montgomery*, 530 F.2d 657, 660 & n.5 (5th Cir. 1976) (holding affidavit in § 1983 conspiracy case was "nothing more than a recital of unsupported allegations" where declarant merely stated "Plaintiffs have evidence which tends to show that Defendants . . . conspired"). Nor is the mere fact that he "reviewed AvMed's claims data" sent to MSP Recovery sufficient to show personal knowledge about the S.B. claim's *assignment*. ECF No. 111-1 ¶ 7; *see* Fed. R. Civ. P. 56(c)(4). And thus the declaration creates no genuine dispute of material fact about whether the S.B. claim was carved out.[8]

---

[8] Although MSP Recovery does not rely on Lopez's deposition statement that he believed AvMed did not actually have agreements with outside vendors, that statement does not show a genuine dispute of fact because (1) it acknowledges the possibility that AvMed might have sought reimbursement for the S.B. claim itself and (2) a statement rooted in speculatory belief is akin to Ziegler's "can confirm" declaration.

Because MSP Recovery relies only on Ziegler's conclusory affidavit, it cites no evidence genuinely disputing that the S.B. claim was carved out. MSP Recovery's failure to do so means that it again fails to show standing.

\* \* \*

At bottom, the problem is that MSP Recovery bought bundles of MSP Act claims without really knowing what claims it was buying. At this stage, it still cannot show that it holds valid assignments for the L.D. and S.B. claims. That means it cannot proceed past summary judgment. *Cf. MAO-MSO Recovery II*, 994 F.3d at 878 (noting that Medicare debt collectors "sue to collect on receivables they paid little or nothing for and then rely on the discovery process to show they acquired something of value and thus have an enforceable right to collect" but that "at the critical put up or shut up moment of summary judgment," they failed to show standing).

# IV.

Because MSP Recovery has not shown standing to pursue the L.D. and S.B. claims, no claims remain in this case. There is thus no need to resolve the other pending motions—MSP Recovery's motion for class certification,[9] Defendants'

---

[9] *See, e.g.*, *Telfair v. First Union Mortg. Corp.*, 216 F.3d 1333, 1343 (11th Cir. 2000) ("With no meritorious claims, certification of those claims as a class action is moot."); *Green v. Holland*, 480 F.3d 1216, 1228 n.9 (11th Cir. 2007) (citing *Telfair*).

motions to strike, and MSP Recovery's summary judgment motion. All are now moot.

## V.

Defendants' motion for summary judgment (ECF No. 95), is GRANTED to the following extent: All claims against Tower Hill Select are DISMISSED on the merits, and all claims against Tower Hill Prime are DISMISSED for lack of jurisdiction.

MSP Recovery's motion for class certification (ECF No. 62), Tower Hill's motions to strike (ECF Nos. 93, 115), and MSP Recovery's motion for summary judgment (ECF No. 97) are DENIED as moot.

The clerk will enter a judgment that says, "Plaintiffs MSP Recovery Claims Series LLC's and MSP Recovery Claims Series 44 LLC's claims against Tower Hill Preferred Insurance Company, Tower Hill Signature Insurance Company, and Omega Insurance Company were earlier resolved on a motion to dismiss. The court ordered those claims be dismissed without prejudice for lack of jurisdiction. Count II was also resolved on a motion to dismiss, and the court later ordered that claim be dismissed with prejudice. The remaining claims were resolved at the summary-judgment stage. It is ordered that Plaintiffs' claims against Tower Hill Select Insurance Company are dismissed on the merits. It is further ordered that Plaintiffs'

claims against Tower Hill Prime Insurance Company are dismissed without prejudice for lack of jurisdiction." The clerk will then close the file.

SO ORDERED on December 20, 2022.

*s/ Allen Winsor*
United States District Judge